**ILWU LOCAL 142, Appellee,**

v.

**LAND & CONSTRUCTION CO., INC., Appellant.**

No. 73–2222.

United States Court of Appeals, Ninth Circuit.

May 30, 1974.

---

William F. Crockett (argued), of Crockett & Crockett, Wailuku, Maui, Hawaii, for appellant.

James A. King (argued), Honolulu, Hawaii, for appellee.

## OPINION

Before DUNIWAY, CHOY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

ILWU 142 brought this action against Land & Construction Co., Inc. to enforce an arbitration award growing out of the grievance of employee Philip Freitas. Land & Construction Co., Inc. contends that the award is void because of the failure of both ILWU 142 and the arbitrator to comply with Section 9(a) of the Labor Management Relations Act, 29 U.S.C. Section 159(a), and that the arbitrator lacked the power to make the award sought to be enforced. The district court, confronted with motions for summary judgment by both plaintiff and defendant, granted the plaintiff's, but the award was "referred back to the said arbitrator for the purpose of determining the exact amount of money due grievant Philip Freitas." We believe this action should be affirmed.

To understand the defendant's contention concerning Section 9(a) of the Labor Management Relations Act, it is necessary to describe the circumstances leading to the arbitration award. ILWU 142 entered into a collective bargaining agreement with Land & Construction Co., Inc., in April, 1968. On June 26, 1970, the employee Freitas was laid off by his employer, Land & Construction Co., Inc. because of a decline in the volume of work available to it. Plaintiff, ILWU 142, promptly took the preliminary steps of the grievance procedure outlined in Section 16 of its collective bargaining agreement with the defendant, Land & Construction Co., Inc., asserting that Freitas' layoff violated his seniority rights as established by the agreement. These preliminary efforts were not successful and led to a demand on July 21, 1970 for arbitration in accordance with the terms of Section 16. In the meantime, Freitas looked for work and on July 22, 1970 was employed by Concrete Industries. By August 4, 1970 the plaintiff and defendant had agreed upon an arbitrator from the panel established by Section 16. On or about the same time the defendant's business improved, and all employees who had been laid off in June, 1970, except Freitas, were called back to work. The defendant asserts that Freitas would have been recalled at that time had he not been employed elsewhere.

During August, 1970 efforts to set a hearing date for arbitration were unsuccessful. On August 31, 1970 the collective bargaining agreement between the plaintiff and defendant expired by its own terms. September, 1970 was marked by further efforts to set a hearing date which by early October appeared to have been successful.

This appearance proved to be false. On October 7, 1970 the plaintiff wrote the defendant that it was no longer the collective bargaining agent for the de-

fendant's employees, but that it had not withdrawn from the arbitration of the Freitas grievance. The defendant immediately questioned the arbitrator about whether the plaintiff could continue to represent Freitas at the arbitration hearing and suggested the hearing tentatively be set for November 7, 1970. The plaintiff·objected to a delay, but for reasons not necessary to detail here, the hearing was delayed until May 13, 1971. Suffice it to say that during this long period of delay the defendant did not vigorously attempt to expedite the hearing.

In the meantime, Freitas ceased to work for Concrete Industries and shortly thereafter took employment with the State of Hawaii. He has been continuously employed by the State since January 1, 1971. Also, in late 1970 the Defendant recognized the Construction & General Laborer's Union, Local No. 368, AFL–CIO (hereinafter designated as Laborer's) as the bargaining agent for its employees. A collective bargaining agreement between the defendant and this union was signed on January 26, 1971. The plaintiff and arbitrator were informed of this agreement.

At the May 13, 1971 hearing the defendant contended that the plaintiff had been supplanted by the Laborer's Union, and on May 19, 1971 the defendant's counsel wrote counsel for the plaintiff in pertinent part as follows:

> It is our opinion that the company will be guilty of an unfair labor practice if it should proceed with arbitration of this grievance with the ILWU and without the consent of the Construction & General Laborer's Union. The Company therefore insists that the grievant and the ILWU obtain the consent of the new bargaining agent to the arbitration proceeding. Until this is done, the Company will not proceed with arbitration, nor will the Company recognize any award made by the arbitrator.

The letter then outlined three alternatives available to the plaintiff and Freitas, viz., (1) obtain the consent of General Laborer's Union, Local 368, (2) obtain an order to compel arbitration, or (3) proceed with arbitration with the defendant reserving his rights on the jurisdictional issue. A similar letter was sent to the arbitrator.

The decision of the arbitrator was rendered on June 7, 1971. In it he held that because the plaintiff was the authorized representative of the defendant's employees in June, 1970 it was obligated to present the Freitas grievance and that the agreement of the defendant with the Laborer's Union did not have retroactive effect. In this manner jurisdiction to arbitrate and make an award· was asserted. With regard to the merits of the grievance, it was held that the layoff of Freitas was not justified, that he should be reinstated "and that he be paid at his usual rate of pay from June 26, 1970 to date, less whatever sums he may have received from other sources since that date." The defendant, in accordance with its letters of May 19, 1971, refused to recognize the award, and the plaintiff's complaint was filed on July 2, 1971.

### I.

There is no doubt that the arbitrator had the power to arbitrate the grievance of Freitas notwithstanding the termination of the collective bargaining agreement between the plaintiff and defendant. Assuming for the moment that no collective bargaining agreement with Laborer's had been executed, there is nothing in the agreement between the plaintiff and defendant that would justify a holding that the decision of the arbitrator, as modified by the district court, manifested an infidelity to that agreement. The principles that must be followed in reviewing an arbitrator's award in a labor dispute were made clear in the first Supreme Court cases interpreting labor arbitration clauses. This group of cases is known as the *Steelworkers* Trilogy and consists of United Steelworkers of America v. American Manufacturing Co., 363 U.S.

564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960). In these cases the Supreme Court made clear that the courts were not to undertake a plenary review of an arbitrator's interpretation of the contract. In *Warrior* the Court indicated that a dispute was subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 363 U.S. at 582–583. *Enterprise* established a similar approach with respect to remedies that might be fashioned by the arbitrator.

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597.

■ There is nothing in the April, 1968 agreement between Land & Construction Co., Inc. and ILWU which terminates the Section 16 grievance procedure upon the expiration of the agreement. Nor is there any provision limiting back pay to a period ending with the expiration of the collective bargaining agreement. The only explicit provision in the agreement dealing with back pay relates to improper discharges and disciplinary suspensions and not to temporary layoffs. Even this provision limits back pay only to that pay "lost because of the discharge or suspension." It is obvious that back pay lost because of improper discharge or suspension could exceed that which accrues to the date of termination of the collective bargaining agreement. It follows that the arbitrator was faithful to the April, 1968 agreement in holding that its termination neither ousted him of jurisdiction to arbitrate nor limited back pay to that accruable to the date of termination.

## II.

■ The defendant does not seriously question these conclusions. His focus is upon the effect of the January, 1971 agreement in which Construction & General Laborer's Union, Local No. 368 replaced the plaintiff as the bargaining agent for the defendant's employees. Modifying the position taken in his May 19, 1971 letters in which he insisted that Laborer's must *consent* to arbitration, defendant contends that jurisdiction to arbitrate a dispute arising under the April, 1968 agreement is dependent on the new bargaining agent being given an *opportunity to participate* in the arbitration proceedings.

In part, this contention rests upon the defendant's reading of Section 9(a) of the Labor Management Relations Act which states:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other

conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

We do not agree with defendant's interpretation. The legislative history of this Section demonstrates that it was enacted to limit to a degree the monopoly held by the properly designated bargaining representative in grievance matters. S.Rep.No.573, 74th Cong., 1st Sess., May 1, 1935; H.R.Rep.No.510, 80th Cong., 1st Sess., June 3, 1947; Comment—The Labor-Management Relations Act of 1947, 42 Ill.L.Rev. 444, 450–52 (1947); Cox, Some Aspects of the Labor Management Relations Act, 1947, 61 Harv.L.Rev. 274, 299–303, (1948); Case Note, 63 Harv.L.Rev. 361 (1949). Individual employees or groups of employees are permitted to present grievances, and any adjustments resulting therefrom are entitled to protection so long as they are not inconsistent with the terms of the appropriate collective bargaining agreement and provided the proper bargaining representative has been given the opportunity "to be present at such adjustment." Putting aside the fact that "an opportunity to participate in the arbitration proceedings" may be more extensive than the "opportunity to be present at such adjustment" required by Section 9(a), it is clear that this Section is applicable only if the arbitration of the Freitas grievance can be considered to be the presentation of a grievance by an individual employee. It was not such a presentation. We have already indicated that it was not such under the April, 1968 agreement with the plaintiff notwithstanding the termination of that agreement prior to the arbitration hearing. Nor can it be said that Laborer's swallowed the plaintiff so as to require treating Laborer's as the continuation of the plaintiff under another name and the plaintiff as a volunteer assisting Freitas. *Cf.* Carpinteria Lemon Ass'n v. National Labor Relations Board, 240 F. 2d 554 (9th Cir., 1956) cert. denied, 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957). *See,* Note, Labor Law—Rights and Duties of Successor Unions—General Dynamics Corp., 11 B.C.Ind. & Com. L.Rev. 1006, 1010 (1970).

In our view, the arbitration can be held to be such a presentation only if the Laborer's contract requires it to be so held. Defendant insists such a holding is required and in so doing relies heavily upon McGuire v. Humble Oil & Refining Co., 355 F.2d 352 (2d. Cir., 1966), cert. denied, 384 U.S. 988, 86 S. Ct. 1889, 16 L.Ed.2d 1004 (1966), and three later cases, two of which are from this Circuit. *See* Stove, Furnace & Allied Appliance Workers v. Gaffers & Sattler, Inc., 470 F.2d 860 (9th Cir., 1972), cert. denied, 411 U.S. 948, 93 S. Ct. 1927, 36 L.Ed.2d 410 (1973); International Ass'n of Machinists v. Howmet Corp., 466 F.2d 1249 (9th Cir., 1972); Southern Conf. of Teamsters v. Red Ball Motor Freight, Inc., 374 F.2d 932 (5th Cir., 1967). In each of these cases arbitration under an earlier collective bargaining agreement was denied because of the strong probability that such arbitration would foster labor unrest with respect to matters which went to the heart of a later collective bargaining agreement with a different union. The two collective bargaining agreements existed because the employees of a seller of all or a portion of the business were represented by a union other than the one representing the employees of the purchaser. Assuming *arguendo* that the principle of these cases is applicable to the facts of this case, a careful examination of the two collective bargaining agreements here involved does not lead us to believe that enforcement of the arbitrator's award will foster labor unrest or create a

risk to the defendant of being guilty of an unfair labor practice.

Although the two agreements differ in a number of significant ways, we find nothing in the Laborer's agreement that suggests either that the defendant should not proceed to conclusion with any properly commenced arbitration under the ILWU 142 contract or that the arbitrator's award conflicts with any provision or policy of the Laborer's agreement. It is true that the seniority provisions of the two contracts differ in language, but it is also true that Section 18 of the Laborer's agreement requires that the employer give preference in hiring "to former employees who are available for rehire."

Our conviction that enforcement here will not promote labor unrest draws considerable strength from the belief that had the defendant feared such unrest it would have made some effort to bring this arbitration to the attention of Laborer's and to secure their intervention in some manner. The formalism of its insistence that either the arbitrator or the plaintiff notify Laborer's and obtain its consent or permit its participation does not suggest the actions of an employer concerned with the possible wrath of its employees' present bargaining agent. Rather it conveys the spirit of an artful tactician determined to surrender slowly. While this spirit is not without its value, it does not encourage us to believe that enforcement of this award will jeopardize the defendant's relations with its employees or their present union. It follows that the laborer's agreement does not require that the presentation of the Freitas grievance under the circumstances of this case be considered as the presentation of an individual employee or group of employees under Section 9(a) of the Labor Management Relations Act. We express no opinion concerning the proper disposition of this case were Laborer's actively asserting its responsibility for the plaintiff's obligations under the April, 1968 contract. *Cf.* Petrowitz, The Effect of a Change of Bargaining Representative, 10 Lab.L.J. 845 (1959).

## III.

■ All that remains is a remnant of the back pay issue. We already have recognized that the April, 1968 contract did not limit the power of the arbitrator to a back pay award covering a period that closes with the termination of that contract. The defendant contends that fidelity to the April, 1968 contract requires that back pay be limited to the period commencing with the wrongful layoff of Freitas and ending with the recall of other workers on or about August 4, 1970. This position is based on an inapposite provision of the April, 1968 contract pertaining "to discipline or discharge by the Employer for insubordination, pilferage, drunkenness, incompetence, failure to perform work as required, violation of the terms of this agreement, or failure to observe safety rules and regulations . . . ." As already indicated, the provision limits back pay (with respect to disciplinary discharges or suspensions) to that pay lost while the discharge or suspension is in effect. Were we inclined to believe this provision applicable to the Freitas grievance, it could be argued strongly that since Freitas in fact has never been recalled by the defendant, his period of suspension ended at the date of the arbitrator's award. We prefer, however, to treat this provision as having no relevance to the back pay of Freitas because he was laid off for reasons unrelated to employee discipline.

■ Our guidance is derived from the Supreme Court's decision in *Warrior* and *Enterprise, supra*. Calculating back pay to the date of the arbitration award manifests no infidelity to the collective bargaining agreement between the plaintiff and defendant. Nor does the trial court's remand for the purpose of determining the exact amount due Freitas represent an unwarranted judicial intrusion into the arbitrator's interpretation of the contract. The judgment of the trial court is

Affirmed.