**STAFFMAN'S ORGANIZING COM-
MITTEE, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMER-
ICA, AFL–CIO, Defendant.**

**No. M75–38 C.A.**

United States District Court,
W. D. Michigan, N. D.
Aug. 22, 1975.

Nino E. Green, Escanaba, Mich., Segal, Roitman & Coleman, Boston, Mass., Harold B. Roitman, Boston, Mass., of counsel, for plaintiff.

Bernard Kleiman, Pittsburgh, Pa., John G. Engberg, Minneapolis, Minn., James M. Collins, Negaunee, Mich., of counsel, Bridges & Collins, Negaunee, Mich., for defendant.

## OPINION

FOX, Chief Judge.

Plaintiff brings this suit to enforce a grievance arbitration award ordering reinstatement of one of its members who was wrongfully discharged. The defendant argues that it has fully complied with the award by reinstating the employee, although it admits transferring him from his former base in the Upper Peninsula of Michigan to the St. Paul, Minnesota area. Plaintiff contends that this violates the arbitration award. Defendant claims that it does not because, it argues, only reinstatement to the same job title was ordered, and under the contract it still has discretion to make geographic work assignments. It further contends that this controversy should be processed through the grievance procedure, and that plaintiff has therefore failed to exhaust its contract remedies.

The defendant employer in this case is a union, the United Steelworkers of America, AFL-CIO. In its capacity as employer, the USWA has about 800 professional employees and a like number of nonprofessional employees. The plaintiff Staffman's Organizing Committee (SOC), is the collective bargaining representative for all full-time staff representatives in the United States and Canada.

The grievant, Sylvio Guisfredi, has been a Staffman servicing various local unions in the Upper Peninsula since 1965, and has resided and worked in that area all his life. He was informed of his discharge on April 13, 1971 in a letter from union president I. W. Abel, after a conflict with the international over its proposed resolution of a long, bitter strike by Local 4312 at the Calumet-Hecla copper mines. The letter from Abel stated in part:

> "The cause for this action is your insubordinate, defiant, irresponsible and harmful conduct in connection with the aforementioned Local Union and the policies of the International Union relating thereto."

The SOC took Guisfredi's case to arbitration, and the arbitrator (from the Federal Mediation and Conciliation Service) found that the United Steelworkers discharged him without just cause, and ordered:

> "(2) That the grievant, S. G., *be reinstated forthwith to his former position of Staffman with all rights and benefits,* including back pay, from which should be deducted his earnings from other employment since the date of his termination." (Emphasis added.)

The preliminary legal issue is whether the matter is properly before this court, or whether the complaint about the transfer must first be submitted to contractual grievance procedures. There are two aspects to this question. First, if the arbitrator's award was not intended to require reinstatement of Guisfredi to his former position in the Upper Peninsula, allegations about the im-

propriety of the transfer would constitute a separate grievable issue. Second, if the reinstatement and transfer were separate and independent transactions, the plaintiff would likewise be required to exhaust contractual grievance procedures. Only if reinstatement to the Upper Peninsula position was encompassed in the arbitrator's award, and that mandate was never complied with, would this case be within the purview of the court, rather than an arbitrator, in its present posture.

The court finds that the arbitrator's award did entitle Mr. Guisfredi to return to his former job, with his former duties, in his former location. Further, the court finds that the reinstatement and transfer were accomplished simultaneously. Therefore, in light of its duty to reinstate Mr. Guisfredi in the Upper Peninsula, the defendant failed to comply with the award, no further exhaustion of contract remedies is required in this instance, and the court orders immediate and full compliance.

In his opinion, Arbitrator Rankin Gibson makes it clear that he was aware of and considered the possibility of a transfer to Minnesota. At page nine, he states:

"On April 9th, Mr. Bensoni called the grievant to Duluth and advised him that he was going to be terminated effective April 15, 1971, and inquired if the grievant would consider a transfer to another district or another area within the district. Mr. Bensoni stated no reasons for the grievant's termination. The grievant stated that he would need some time to talk to his family to decide about a transfer. On April 13, 1971, the International Union President wrote to the grievant, advising him of the termination. . . ."

Arbitrator Gibson was fully aware that Guisfredi was faced with the threat of transfer, as well as discharge, at the time of his termination. The proposed transfer was a possible alternative sanction for the alleged misconduct of Guis-

fredi, but the arbitrator found that the employer had no just cause for disciplining him at all. Clearly, when the arbitrator ordered that Guisfredi be reinstated to his former position with all rights and benefits, he intended nothing less than that Guisfredi be returned to his former job, in his former location.

The instant situation is therefore within the ambit of the arbitrator's decision, and properly before this court for decision by way of enforcement of the arbitral award.

■ Defendant has argued that even if the arbitrator did intend to order reinstatement to the Upper Peninsula, the transfer could still constitute a separate grievable issue if it were found that Guisfredi was reinstated to his old position and then subsequently transferred. Otherwise, the defendant argues, a plaintiff ordered reinstated could never be transferred afterwards without supervision of the federal courts. The court agrees that a bifurcated reinstatement and subsequent transfer might call for submission of a new grievance rather than an enforcement suit in some circumstances. On the facts of this case, however, it does not. An order of reinstatement requires good faith compliance. *NLRB v. Interurban Gas Co.*, 354 F.2d 76 (CA 6, 1965); *Lakeland Bus Lines, Inc. v. NLRB*, 278 F.2d 888 (CA 3, 1960).

In December 1974, over three and one half years after Guisfredi was discharged, the arbitrator announced his decision ordering reinstatement. In purported compliance with this award, the employer offered Guisfredi a position equivalent to his former one, except that he would be based at the defendant's subdistrict office in St. Paul, Minnesota.

■ Defendant initially argued in its pleadings that it had fully complied with the award by reinstating Guisfredi to his former position, and implied that it had subsequently transferred him to St. Paul. (See Defendant's Answer, ¶ 11.) Later however, in its brief, defendant admitted that after the arbitrator's de-

cision Guisfredi "was *reinstated* to his position of staffman *at the defendant's subdistrict office in St. Paul, Minn.*" (Emphasis added.) A major reason for the transfer, according to its brief, was that the former position no longer existed. USWA argued, at pp. 9–10 of the brief, that:

"... [T]he defendant has gone beyond the duty placed upon it by the decision to accommodate Mr. Guisfredi. It should be kept in mind that one of the reasons for Mr. Guisfredi's discharge, whether justifiable or not, was the loss by the Defendant of a substantial number of union members in upper Michigan. The overall result of such loss was that the number of staffmen necessary to service the remaining members in upper Michigan was also necessarily reduced. *Thus, Defendant's failure to reinstate Mr. Guisfredi in upper Michigan is due solely to the lack of a need for another staffman in that area.* ... It is ironic that the argument presented by Plaintiff on behalf of Mr. Guisfredi, should they prevail, would result in Mr. Guisfredi having no position whatsoever, while the actions of the Defendant, which were beyond the duty placed upon it, have resulted in Mr. Guisfredi being gainfully employed." (Emphasis added.)

In this context, the defendant cites a number of cases dealing with the problems of orders of reinstatement to nonexistent positions. Among them is *NLRB v. Jackson Farmers, Inc.*, 457 F.2d 516 (CA 10, 1972). The portion quoted by defendant states in part:

"Generally, when employees are unlawfully discharged and the NLRB orders reinstatement to their former or substantially equivalent positions, the employer does not have a choice of offering either the former or an equivalent position. *If the former position still exists, he must offer that one.* CCH Lab.L.Rep. ¶ 4730.01." (Emphasis in defendant's brief.)

The court agrees with defendant that this proposition of law is controlling. However, at oral argument, the defendant abandoned its contention that the Upper Peninsula staffman's position was eliminated because of loss of membership, and conceded that the former position still exists, and always has, though it was filled in the interim by another employee. Since that position still exists, defendant must, according to the case law it cites to this court, reinstate Guisfredi to it.

This court does not lightly disregard the defendant's arguments about exhaustion of remedies and the importance of arbitration. It is well aware that this very union which is the defendant in this case was the plaintiff in the landmark group of cases known as the "Steelworkers Trilogy" which established the fundamental importance of contract remedies, especially arbitration, in our scheme of industrial self-goverment. See *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

However, the central role of arbitration is undercut just as significantly when a court refuses to enforce a valid arbitral award as when it usurps matters within the province of the arbitrator. The court is no more free to refuse to order full compliance with a valid award than it is to review the merits of a grievance considered by the arbitrator. Either course of action would erode the authority of the arbitrator.

While the court performs an important function in our scheme of labor law by deferring to arbitration contracted for by the parties, it likewise serves an essential purpose by holding each party to its end of the bargain. Con-

gress, in enacting the National Labor Relations Act, indicated a broad concern with a procedure for making collective bargaining agreements enforceable in the courts by either party. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 453, 77 S.Ct. 912, 1 L.Ed.2d 972, 978 (1957).

The integrity of the process itself is not the only consideration; its effect on those subject to it is also a valid concern. There would be a tremendous chilling effect on employee grievants if they knew that, after laboring for over three years to exhaust their contractual grievance procedures, culminating in arbitration, they could be transferred (if they prevailed) to the farthest regions of their district and would have no recourse but to begin the task anew. These procedures contracted for by the parties were never intended to force a grievant into the role of a modern day Sisyphus. The courts, mindful of their proper place in the legislative scheme, should avoid requiring such futile and unnecessary exercises.

As noted above, the court finds that the arbitrator's award required reinstatement of Mr. Guisfredi to his former position in the Upper Peninsula, and that the reinstatement and transfer by the defendant were one transaction rather than independent events. Because the defendant has not voluntarily complied with this award, the court orders immediate and full reinstatement of Mr. Guisfredi to his former position as staffman in the Upper Peninsula.

Finally, there is the matter of expenses. Defendant was making payments to Guisfredi for expenses reasonably incurred in connection with his assignment to Minnesota. When this lawsuit was initiated the payments were terminated. Since the discharge was wrongful and the reinstatement was inadequate, and Guisfredi was thereby forced to incur certain expenses, the court orders those costs to be paid by the defendant. If the parties are unable to agree between themselves as to the amount of these expenses, the court will hold a further hearing to determine that issue.