LOCALS 2222, 2320–2327, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiffs, Appellees,

v.

NEW ENGLAND TELEPHONE AND TELEGRAPH CO., Defendant, Appellant.

No. 80–1142.

United States Court of Appeals, First Circuit.

Argued June 2, 1980.

Decided Aug. 12, 1980.

---

Joseph C. D'Arrigo, Boston, Mass., with whom William J. McDonald and C. Duane Aldrich, Boston, Mass., was on brief, for defendant, appellant.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle & Wanger, P.C., Boston, Mass., was on brief for plaintiffs, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and MAZZONE,* District Judge.

CAMPBELL, Circuit Judge.

New England Telephone and Telegraph Company (the "Company") appeals from an order of the district court returning a labor arbitration award to the original arbitrators.

The Company discharged John Leary, an employee, on October 7, 1976. The Union [1] promptly filed a grievance protesting Leary's discharge and later demanded arbitration when the dispute could not be resolved. Under Article 9 of the collective bargaining agreement, the Board of Arbitration consisted of "one representative selected by the Union, one representative selected by the Company, and an impartial chairman mutually chosen by the parties." A hearing was held on October 20, 1977, the parties having submitted the following issue for arbitration:

"Was the discharge of John Leary without just cause within the meaning of Article 9.03(a) of the parties' collective bargaining agreement . . . . If so, what should the remedy be?"

On January 24, 1978, the Board of Arbitration, with the Company member dissenting, issued an opinion and award. The award provided that

"The discharge of John Leary was without just cause. He should be reinstated with full seniority and should be made whole for his loss of earnings since April 1, 1977."

Thereafter the Union and the Company disagreed as to the amount of Leary's lost earnings; [2] and on January 15, 1979 the Union filed the present complaint in the district court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). The complaint outlined the areas of disagreement between the Union and Company and requested "that the Court order the Company to resubmit the dispute between the parties as to the remedy due John Leary to the same Board of Arbitration which issued the original award."

On March 19, 1979, the Company moved to dismiss, contending 1) that the complaint was time barred by applicable statutory limitations periods "specified in either the Federal or the Massachusetts Arbitration Acts"; and 2) that the Union had failed to exhaust the grievance/arbitration procedure detailed in the governing collective bargaining agreement for the resolution of disputes arising out of that agreement.

---

* Of the District of Massachusetts, sitting by designation.

1. The term "Union" herein refers to Locals 2222, 2320–2327, International Brotherhood of Electrical Workers, AFL-CIO.

2. Article 9.03(a) of the collective bargaining agreement provides in part, "If the Board of Arbitration finds that the discharge or disciplinary action was without just cause, the employee shall be reinstated and may receive his straight time rate of pay for time lost, less any amount, other than wages, received from the Company at time of dismissal." The Union in its brief informs us that the present dispute centers on its disagreement with the Company's alleged position that overtime which Leary would have earned had he not been discharged should not be computed as part of the award while overtime which he in fact earned in alternative employment should be used to offset the amount owing. We of course express no views on the merits of this dispute.

The Union filed both an opposition and a "Motion to Remand to Board of Arbitration"; the latter repeated the Union's request for resubmission to the original Arbitration Board "for the purpose of determining the amount of wages due the employee." On January 18, 1980, the district court, in a brief memorandum and order, denied the Company's motion to dismiss and granted the Union's request for remand, sending the dispute over computation of lost earnings back to the original Board of Arbitration. The court found no time barrier to commencement of the section 301 action. And, concluding that the issue before it concerned the "computation of the amount of loss of earnings awarded by the Board" rather than "the interpretation or application of the provisions of the collective bargaining agreement," the district court ruled the Union was not bound to re-exhaust the full grievance arbitration procedure.

## I.

■ The first question is that of appellate jurisdiction. The Union contends the district court's order denying the Company's motion to dismiss and remanding the back pay issue to the Arbitration Board "is not a 'final decision' within the meaning of [28 U.S.C.] § 1291 nor the equivalent of an 'interlocutory order . . . granting [an] injunction' appealable under § 1292(a)(1)." The Company responds that the court's remand order was, in fact, clothed with finality as it granted "the full relief sought by the Union in its complaint." In the alternative the Company argues that the present order is "analogous to an injunction and hence appealable . . . ."

Although the appealability of a district court's order entered in the context of arbitration proceedings has frequently been discussed, no entirely satisfactory body of guiding principles has emerged.[3] In the present case, as in others, the "medieval if not Byzantine peculiarities of this area of the law," *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 189 (1st Cir. 1972), make it difficult to identify the controlling rule or exception.

The matter of appealability is, moreover, intertwined with one of the central substantive issues, namely, the proper characterization of the present section 301 action. In such circumstances, there is sometimes much to be said for candidly deciding the merits rather than toying with them in a jurisdictional minuet. *See, e. g., Clark v. Kraftco Corp.*, 447 F.2d 933, 935 (2d Cir. 1971), and authorities cited. The Supreme Court recently said in a case where appealability was found as a "practical matter" but was, in fact, far from clear: "[N]ow that the case is before us . . . the eventual costs, as all the parties recognize, will certainly be less if we now pass on the questions presented here rather than send the case back with those issues undecided." *American Export Lines, Inc. v. Alvez*, —— U.S. ——, ——, 100 S.Ct. 1673, 1676, 64 L.Ed.2d 284 (1980) (*quoting Gillespie v. United States Steel Corp.*, 379 U.S. 148, 153, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964)). Given the closeness of the jurisdictional question, the confluence of the appealability issue with one of the central points raised by the appeal, and the fact that as we sustain the district court, the resolution of the appealability issue does not affect the outcome of the case, we shall assume, without deciding, that the appeal is properly

3.  *E. g., Goodall-Sanford, Inc. v. United Textile Workers*, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); *Robbins v. Prescott Publishing Co., Inc.*, 614 F.2d 3 (1st Cir. 1980); *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183 (1st Cir. 1972); *Limbach Co. v. Gevyn Construction Co.*, 544 F.2d 1104 (1st Cir. 1976), *cert. denied*, 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594 (1977); *Hudson Lumber Co. v. United States Plywood Corp.*, 181 F.2d 929 (9th Cir. 1950); *City of Naples v. Prepakt Concrete Co.*, 494 F.2d 511 (5th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974); *Rogers v. Schering Corp.*, 262 F.2d 180 (3d Cir.), *cert. denied* 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959); *Transportation-Com. Div. v. St. Louis-San Francisco Ry. Co.*, 419 F.2d 933 (8th Cir. 1969), *cert. denied*, 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970); *United Transportation Union v. Illinois Central R.R. Co.*, 433 F.2d 566 (7th Cir. 1970), *cert. denied*, 402 U.S. 915, 91 S.Ct. 1374, 28 L.Ed.2d 661 (1971). *Cf. Clark v. Kraftco Corp.*, 447 F.2d 933 (2d Cir. 1971).

before us. *See Manning v. Trustees of Tufts College*, 613 F.2d 1200 (1st Cir. 1980); *Massachusetts v. Hale*, 618 F.2d 143, at 145 n.3 (1st Cir. 1980); *Robbins v. Prescott Publishing Co., Inc.*, 614 F.2d 3 (1st Cir. 1980).

## II.

■ The Company reasserts before us the two arguments previously raised in its unsuccessful motion to dismiss filed with the district court. We shall discuss these in reverse order, turning first to the Company's contention that in settling the back pay dispute the Union should have been required to resort anew to the full grievance/arbitration mechanism detailed in the parties' collective bargaining agreement. The agreement provides for grieving complaints "involving the interpretation or application of any of the provisions" of said agreement. Here, the collective bargaining agreement explicitly attempts to define the scope of the back pay remedy granted to reinstated employees following a wrongful discharge by providing:

> "If the Board of Arbitration finds that the discharge or disciplinary action was without just cause, the employee shall be reinstated and may receive his straight time rate of pay for time lost, less any amount, other than wages, received by the Company at the time of dismissal."

The Company thus argues that the resolution of any dispute as to the back wages due a wrongfully discharged employee initially and necessarily involves a question of the proper meaning of this provision in the bargaining agreement. As a result, the Company argues, the bargaining agreement provision requiring full grieving of complaints involving interpretation or application of that agreement here requires that the Union channel the instant back pay dispute through the entire grievance/arbitration process.

■ While the Company's position has some initial plausibility, we do not find it persuasive. We start with the fact that it is firmly established within the federal labor law that a district court may, in the context of a section 301 proceeding, resubmit an existing arbitration award of the type here in issue to the original arbitrators for "interpretation" or "amplification."[4] This judicial power, which is in contrast to usual common law principles[5] and requires no affirmative sanction in the contract or in any statutory provision, has been established by the federal courts in carrying out their mandate to "fashion from the policy of our national labor laws" a substantive body of law applicable in section 301 cases, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). In large measure, it seems to have developed as a necessary corollary to the courts' reluctance themselves to interpret either collective bargaining agreements or arbitration awards based on the construction of such agreements. Whatever the genesis, there can be no question that the power exists.

---

4. *Hanford Atomic Metal Trades Council v. General Electric Co.*, 353 F.2d 302 (9th Cir. 1965); *IBEW Local 369 v. Olin Corp.*, 471 F.2d 468 (6th Cir. 1972); *San Antonio Newspaper Guild Local 25 v. San Antonio Light Div.*, 481 F.2d 821 (5th Cir. 1973); *ILWU Local 142 v. Land & Construction Co., Inc.*, 498 F.2d 201 (9th Cir. 1974); *Steelworkers v. W. C. Bradley*, 551 F.2d 72 (5th Cir. 1977); *Teamsters Local No. 25 v. Penn. Transportation Corp.*, 359 F.Supp. 344 (D.Mass.1973); *United Papermakers & Paperworkers v. Westvaco Corp.*, 461 F.Supp. 1022 (W.D.Va.1978). *Cf. Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *LaVale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569 (3d Cir. 1967); *Monaghan v. Central Vermont Ry., Inc.*, 404 F.Supp. 683 (D.Mass.1975); *Railway Labor Act*, 45 U.S.C. § 153 First (q).

5. The more traditional rule of common law arbitration is that when the arbitrators have executed their award and declared their decision they are "functus officio" and, in the absence of the parties' consent, have no power to proceed further, even to the extent of interpreting their previously entered award. Elkouri and Elkouri, How Arbitration Works 239 (1973). *But see LaVale Plaza, supra*, 378 F.2d 569.

Incidentally, we find it inexcusable that in citing to Elkouri and Elkouri for the above general proposition, the Company omitted all reference to material in that work describing the relevant labor law exception.

It follows that the instant situation does not involve any question of the court's general "power" to resubmit to the original Board of Arbitration. The only question is whether in the present circumstances it would be more appropriate for a court to channel the dispute back through the entire grievance/arbitration process rather than to simply send it again to the original arbitrators.

There is not a great deal of authority bearing directly on this issue. In *San Antonio Newspaper Guild Local 25 v. San Antonio Light Division*, 481 F.2d 821 (5th Cir. 1973), the Fifth Circuit considered a somewhat analogous problem in a case involving a dispute over the remedy provision of a reinstatement order that was framed in terms nearly identical to those used in the present award. There, as here, the Union and Company had failed to agree on the financial implications of an award providing that the reinstated employee "shall be made whole for any loss in earnings for the [appropriate time] period . . . ." In discussing, though not resolving, the question whether the back pay dispute was a separately arbitrable matter, the court noted, in language which we find instructive:

> "[W]e note that the collective bargaining agreement here at issue—upon which [the arbitrator's] authority to act necessarily rested—makes no provision for grieving the *award* of an Arbitrator which, according to the language of the contract itself, 'shall be final and binding.' Rather, the grievance machinery may be invoked, either by the Union or the Company, for 'all grievances *arising under this agreement*.' We doubt that the *award* of an arbitrator—as opposed to the *procedure* for securing arbitration—falls within the four corners of the agreement before us. If not, the award itself would not constitute an arbitrable issue.
>
> "There may be, however, special circumstances where invocation of grievance machinery might be appropriate following the award of an arbitrator. Ordinarily this would occur where a *collateral* dispute arises from an award which is *not* self-executing. *See International Association of Machinists and Aerospace Workers v. Aerojet-General Corporation*, 263 F.Supp. 343 (D.C.Cen.D.Cal.1966); *District 50, United Mine Workers v. Revere Copper and Brass, Inc.*, 204 F.Supp. 349 (D.C.Md.1962). This is not such a case. [The arbitrator's] award was clearly intended to be and would have been self-executing but for an ambiguity therein . . . which left the parties at odds over its interpretation."

*Id.* at 824 n.3. (Emphasis in original.) The court suggested that it would be "inclined to agree with the Union" that the back pay dispute "did not present an arbitrable matter" requiring full resort to grievance/arbitration procedures. *Id.* at 824.

Other courts faced with determining whether re-exhaustion of the grievance/arbitration process is the required course for resolving a post-award controversy have distinguished disputes arising from the "application" or "implementation" of an award, which are viewed as raising new issues under the collective bargaining agreement, and those which are deemed to concern simply the "interpretation" of an award. *See, e. g., Steelworkers v. Interpace Corp.*, 447 F.Supp. 387 (W.D.Pa.1978); *United Papermakers & Paperworkers v. Westvaco Corp.*, 461 F.Supp. 1022 (W.D.Va. 1978); and cases cited. In the latter sort of case, remand to the original arbitrators for resolution of the interpretive difficulties has been found appropriate, with re-exhaustion not required. *Compare Interpace Corp.* and *Westvaco Corp., supra. See San Antonio Newspapers, supra*, 481 F.2d at 824 n.3.

The district court considered the present dispute as falling within the second of the above categories.[6] Although we agree with the court's decision to remand, we doubt

---

6. The court concluded: "Insofar as the issue concerns the computation of the amount of loss of earnings awarded by the Board, it does not involve the interpretation or application of the provisions of the collective bargaining agreement. Accordingly, [the Union] is not bound to exhaust again the grievance arbitration procedure."

that the instant case can be so neatly analyzed. While determining the specific amount of back pay is, in a sense, a matter of "interpreting" the old award, it also involves construing the language in the collective bargaining agreement providing a formula for computing the back pay owing a wrongfully discharged employee.

But while the above dichotomy between interpreting the "award" and interpreting the "contract" is not especially instructive here, we have little doubt that utilization of the original arbitration panel is indicated on these facts. We find it dispositive that the present dispute, while not actually reached in the first arbitration proceeding, was plainly encompassed by the original submittal.

The parties submitted the following issue to the Board of Arbitration for resolution: "Was the discharge of John Leary without just cause within the meaning of Article 9.03(a) of the parties' collective bargaining agreement . . . If so, what should the remedy be?" The issue thus framed directly contemplated determination of remedy by the Arbitration Board as well as construction of Article 9.03(a) of the collective bargaining agreement, at least insofar as that Article touched upon the "just cause" question. Article 9.03(a), however, not only provides the "just cause" yardstick by which wrongful discharge allegations are measured, but also sets out the definition of the back pay remedy which is to be awarded in the event such wrongful discharge is in fact shown. By giving to the present Arbitration Board the remedy matter as a part of the overall question of the propriety of the discharge under Article 9.03(a), the parties were, we believe, necessarily inviting construction by the arbitrators of that Article's remedy provision as well. The Company was certainly on notice that, incident to any finding of wrongful discharge, the original arbitrators, who were specifically asked to determine the appropriate remedy, would have to define, to whatever extent seemed necessary, the scope of the lost wages remedy provided by the bargaining agreement. Indeed, this was the only remedy which could properly be considered by the arbitrators, as they "have no power to . . . disregard any of the provisions of [the collective bargaining] agreement . . . ." Article 9.02(d). The interpretation of the agreement's definition of remedy was thus a necessary and integral part of the broader issue submitted in the original grievance. *Cf. Interpace Corp., supra,* 447 F.Supp. at 392. And though, in light of the present dispute, it appears that the Arbitration Board has not yet completely resolved the remedy issue, it may be said that "Where the award does not adjudicate an issue which has been submitted, then as to such issue [the original] arbitrator has not exhausted his function and it remains open to him for subsequent determination." *Interpace Corp., supra,* 447 F.Supp. at 391 (*quoting LaVale Plaza, Inc. v. R. S. Noonan, Inc.,* 378 F.2d 569 (3d Cir. 1967)). As an issue falling directly within the scope of the parties' submission to the Arbitration Board, we conclude that the partly resolved matter of remedy was properly returned to that Board for further consideration.

To require the Union to invoke the "time-consuming and burdensome grievance process again" in order that the parties might resolve the remnants of a dispute which has already once traveled that route would seriously undermine the chief policies underlying resort to those procedures in the first instance: the speedy, flexible and inexpensive resolution of labor disputes. *Interpace Corp., supra,* 447 F.Supp. at 392. "The purpose of arbitration is to resolve disputes, not to create new ones." *Bell Aerospace Co. v. Local 516,* 500 F.2d 921, 924 (2d Cir. 1974). The grievance arbitration procedures, "contracted for by the parties, were never intended to force a grievant into the role of a modern day Sisyphus," *Staffman's Organizing Committee v. Steelworkers,* 399 F.Supp. 102, 106 (W.D.Mich.1975), and in the circumstances presented we affirm the decision below not to require the Union to run the entire course again.

### III.

We now turn to the Company's contention that the present section 301 action

was untimely brought. While section 301 "confers jurisdiction upon the federal district courts over suits upon collective bargaining contracts," the Act itself contains no limitations period. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 696–97, 86 S.Ct. 1107, 1109, 16 L.Ed.2d 192 (1966). *See generally Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In response to this statutory gap, the Supreme Court in *Auto Workers v. Hoosier Cardinal, supra*, held that the timeliness of a section 301 suit is to be determined, "as a matter of federal law, by reference to the appropriate state statute of limitations." 383 U.S. at 704–05, 86 S.Ct. at 1113 (footnote omitted). The Court instructed that the characterization of a section 301 action for the purpose of selecting that appropriate state limitations provision is ultimately a question of federal law, though the characterization that state law would impose should not be rejected unless it "is unreasonable or otherwise inconsistent with national labor policy." *Hoosier Cardinal, supra*, 383 U.S. at 706, 86 S.Ct. at 1113.

Referring to these principles, the Company urges that the present order of resubmission is properly characterized as one for clarification of an arbitration award "so indefinite or incomplete" as to be incapable of performance. Thus characterized, the section 301 proceeding should be governed, it is contended, by the timeliness guidelines set forth in section 8 of the Massachusetts Arbitration Act, Mass.G.L. c. 150C, § 8. That provision states in relevant part,

"§ 8. Award; modification; time for application; notice

Upon application of a party or, if an application to the court is pending under sections ten, eleven or twelve, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in clauses (1) and (3) of paragraph (a) of section twelve, or may clarify or correct an award which is so indefinite or incomplete that it cannot be performed. *The application shall be made within ten days after delivery of the award to the applicant.* Written notice thereof shall be given forthwith to the opposing party, stating that he must serve his objections thereto, if any, within ten days from the notice. The award so modified or corrected shall be subject to the provisions of sections ten, eleven, and twelve." (Emphasis added.)

It might be said, initially, that were section 8 found applicable, we doubt that the rather short ten day period provided could be deemed "reasonable" in the circumstances or "consistent with national labor policy." *Hoosier Cardinal, supra*, 383 U.S. at 706, 86 S.Ct. at 1113. As previously suggested, the resubmittal remedy seems to have been developed to provide federal courts with the flexibility needed to obtain the views of arbitrators on issues of contract interpretation which the courts themselves are forbidden to handle. A ten day limitations period would hardly seem to well serve this purpose. This question, however, we need not decide as we conclude that the instant case is not one properly characterized as falling within the ambit of section 8.

In *Magliozzi v. Handschumacher & Co.*, 327 Mass. 569, 99 N.E.2d 856 (1951), the Massachusetts Supreme Judicial Court was called upon to enforce a similar arbitration award under a statute preceding the more recently enacted Massachusetts Arbitration Act. The *Magliozzi* award, in terms nearly identical to the present command to make Leary "whole for his loss of earnings," had reinstated a wrongfully discharged employee with an order that he recover all "moneys lost by virtue of the improper layoff." 99 N.E.2d at 858. In rejecting a challenge to that remedy provision on grounds of lack of definiteness, the Supreme Judicial Court concluded, "There is no fatal vagueness in the use of the phrase 'moneys lost' . . . The fundamental fact of the impropriety of the layoff has been settled adversely to the [Company]. It has also been determined in the award that the [employee] is to have damages. The computation of these damages, however constructive might have been the making of one by the arbitrator, is a legal consequence which need not be spelled out in the award." *Id.* Given the holding in *Magliozzi*, and the common knowledge, to

which the parties adverted during argument, that the framing of an arbitration remedy in a wrongful discharge case is often satisfactorily effectuated through the use of an award phrased as this one was, we cannot say that an award incorporating this type of language suffers from the sort of fatal indefiniteness contemplated by section 8.[7]

Rather, section 8 seems intended as a device permitting arbitrators to cure defects more immediately discoverable from the face of the previously entered award. This conclusion gains logical support from the brevity of the limitations period. Seldom would it be known within ten days after delivery of an award of this type that further arbitration was needed to calculate the back pay due to the reinstated employee. Even if the parties suspected the possibility of disagreement, it would not be known if they were at an absolute impasse until the relevant data was assembled, and both sides had taken positions. During this period, one side could prevent the other from taking timely action simply by being noncommittal. That section 8 relates to more manifest errors is also suggested by its reference to motions to "modify or correct [an arbitration] award upon the grounds stated in clauses (1) and (3) of paragraph (a) of section twelve . . . ." Those grounds include miscalculation of figures, mistaken description of individuals or property referred to in an award, and other imperfections of "form, not affecting the merits of the controversy."

We are not, therefore, persuaded that the present section 301 action, seeking resubmission of the award, is the kind to which the ten day limitation of section 8 of the Massachusetts Arbitration Act should, by analogy, be applied.[8]

Rather we tend to accept the Union's position that this action should be characterized as one to enforce or confirm an arbitration award. The cases, dealing with the power of a district court to resubmit disputes of this sort to the original arbitrators, see Section II, *supra*, indicate that in a typical wrongful discharge situation where the parties have failed to agree on the back pay provision of the arbitrators' reinstatement order, the Union often seeks to break the impasse by commencing a section 301 action for enforcement of the award.[9] The Union here would, therefore, have been following a well trodden path, see also note 4, *supra*, had it framed its present section 301 action as one for enforcement of the award, and then—once it became clear (as was already known) that the amount of back wages could not be discerned from the face of the award and was a source of dispute between the parties—moved for remand of the back pay issue to the original arbitrators. This, in fact, is how we see the present case. To be sure, the Union couched its complaint in terms of a request for remand, rather than, ultimately, for enforcement; but the essence of the matter is the same.

Viewing the case in this light, we see no limitations problem. The right to remand to the original arbitrators is, in these circumstances, derived from substantive law shaped within the context of section 301 by

---

7. We find a further indication of the common and acceptable nature of this type of award in cases decided in the area of labor relations. The NLRB most frequently resolves back pay disputes after finding wrongful discharge by resort, in the first instance, to general remedy provisions of the sort herein involved. The actual computation of back pay owed is generally deferred and accomplished in subsequent proceedings. *See Zim's Foodliner, Inc. v. NLRB*, 495 F.2d 1131, 1144 (7th Cir. 1974). *See also Am-Del-Co., Inc. and Compton Service Co.*, 225 NLRB 698 (1976) and 234 NLRB 1040 (1978); *Peerless Distributing Co.*, 149 NLRB 1062 (1964).

8. Nor is there any more relevant provision of the Massachusetts Act containing a limitations period to which we may turn.

9. *E. g., San Antonio Newspaper Guild v. San Antonio Light Div.*, 481 F.2d 821 (5th Cir. 1973); *ILWU Local 142 v. Land & Construction Co., Inc.*, 498 F.2d 201 (9th Cir. 1974); *IBEW Local 369 v. Olin Corp.*, 471 F.2d 468 (6th Cir. 1972). *Cf. Steelworkers v. W. C. Bradley Co.*, 551 F.2d 72 (5th Cir. 1977); *Hart v. Overseas Nat. Airways, Inc.*, 541 F.2d 386 (3d Cir. 1976); *Hanford Atomic Metal Trades Council v. General Electric Co.*, 353 F.2d 302 (9th Cir. 1965); *Local 234 v. Philadelphia Transp. Co.*, 228 F.Supp. 423 (E.D.Pa.1964).

the federal courts. No particular period of limitations has been formulated as to such proceedings. Since the right was developed as an adjunct to a proceeding to enforce an award, perhaps the most reasonable limitations period would be any pertaining to a section 301 enforcement suit. There is, however, no analogous limitations period in the Massachusetts Arbitration Act for applications to confirm, see Mass.G.L. c. 150C, § 10. The Federal Arbitration Act does, however, provide a one-year limitations period, 9 U.S.C. § 9; but even assuming, without deciding, the advisability of adopting that period, plaintiff's action here would have been timely brought.

We accordingly find the present action was not time barred.[10]

*Affirmed.*

**10.** Noting that its motion to dismiss is not properly deemed a responsive pleading, *see* Fed.R.Civ.P. 12(a), the Company further contends that the district court erred by ruling on the Union's remand request without affording it any opportunity to "respond to the merits of the Union's complaint." Whatever technical merit there might be in this argument, we can discern no prejudice stemming from the district court's action. Its motion to dismiss aside, the Company had a chance to respond to the Union's subsequent motion for remand, though it chose instead to stand silent. Moreover, the Company has had a full opportunity, of which we assume it availed itself, to brief and argue before this court any points which it might have raised in a responsive pleading below. Finally, and importantly, the Company in its brief now expressly disavows interest in receiving the very relief we assume would be appropriate to cure the alleged error—a remand to the district court so that an answer to the Union's complaint could be filed. We are simply at a loss to see what harm to the Company resulted from the timing of the district court's action.