**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE and AGRICULTURAL IMPLEMENT WORKERS of AMERICA, AFL–CIO, CLC and its Local 952, Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, Defendant.**

**No. 86–C–901–C.**

United States District Court, N.D. Oklahoma.

March 25, 1987.

Shereen Arent, Jay Thomas Youngdahl, Youngdahl & Youngdahl, Little Rock, Ark., Maynard I. Ungerman, Ungerman, Conner & Little, Tulsa, Okl., for plaintiffs.

Frederic N. Schneider, III, David P. Page, Tulsa, Okl., for defendant.

## ORDER

H. DALE COOK, Chief Judge.

Now before the Court for its consideration is the motion to dismiss, or in the alternative a motion for summary judgment, filed by defendant Rockwell International Corporation (Rockwell). All parties having responded, the issues are now ready for this Court's determination.

This dispute arises out of a continuous series of collective bargaining agreements between defendant Rockwell and plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO, CLC and its Local 952 (Union). The successive series of agreements dates back to 1968.

In 1972, the Union filed a grievance pursuant to the procedures set forth in the collective bargaining agreement alleging that Rockwell was allowing non-union employees to perform work that was to be performed only by union employees. Specifically, the Union alleged that Quality Control Representatives, non-union employees, were performing functions which were to be performed exclusively by Inspectors-Outside Production who are union employees. The grievance procedure provided for mandatory arbitration which was to be final and binding. On July 20, 1972, Arbitrator Kagel issued a decision as to this grievance. After an in-depth discussion of the meaning of the applicable provisions of the collective bargaining agreement, Arbitrator Kagel issued the following order:

1. Quality Control Representatives are ordered to hereby cease and desist in signing off or in any way approving for purposes of inspection parts to be supplied to North American [Rockwell] at the suppliers premises....

On July 17, 1984, the Union filed a second grievance alleging a violation of the collective bargaining agreement as interpreted by the Kagel arbitration decision. On January 25, 1985, this grievance was settled on the basis that Rockwell would abide by the Kagel arbitration decision. It is disputed by the parties whether Rockwell admitted that it was not abiding by the Kagel decision prior to the settlement.

The Union filed this suit seeking to force Rockwell to comply with the arbitration decision and the subsequent settlement based on the arbitration decision. Rockwell has responded with this motion seeking dismissal by claiming that the Union must proceed through the mandatory arbitration provisions contained in the collective bargaining agreement before the Union can file suit in federal court. The Union responds to this motion by claiming that it is only seeking to *enforce* the settlement and the prior arbitration decision, and not to have the Court interpret the collective bargaining agreement.[1]

---

1. Rockwell has countered by arguing that this case is controlled by *United Mine Workers District No. 5 v. Consolidation Coal Co.,* 666 F.2d 806 (3rd Cir.1981). However, Rockwell's reliance on *United Mine Workers* for the proposition that the Court lacks jurisdiction is misplaced. Although instructive in the case as to the standards of specificity required for enforcement of a settlement or arbitration award, *see infra,* this case is factually distinguishable from *United Mine Workers.* Specifically, *United Mine Workers* involved an attempt to enforce a single settlement agreement; however, in this case, the Union is primarily seeking enforcement of a prior arbitration award. The Court need not even consider the enforceability of the settlement agreement in this case because it is obvious that the prior arbitration award meets the criteria for enforcement.

In cases such as this one, jurisdiction is granted to this Court by Section 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a) (1982). This section gives federal district courts jurisdiction in "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." Thus, the district courts may enforce the provisions of a collective bargaining agreement. If the collective bargaining agreement contains a mandatory arbitration provision, the district court may force a party to submit to arbitration. Further, arbitration is a preferred method of settling disputes between an employer and a union because of the speed and efficiency of the arbitration process. However, it is equally important to provide a means of judicial enforcement of an arbitration decision provided the Court does not infringe on the province of the arbitrator. Without such a means of enforcement, compliance with an arbitration decision would depend solely on the voluntary acts of the parties.

It is beyond question that courts may enforce an arbitration decision pursuant to the jurisdiction granted by Section 301 of the National Labor Relations Act. The Supreme Court has expressly held that one party may seek enforcement of a decision if such decision was obtained pursuant to the parties' chosen method of settling disputes.

> If, as petitioners allege, the award of the Joint Area Cartage Committee is under the collective bargaining agreement final and binding, the District Court has jurisdiction under § 301 to enforce it.... Thus, if the award at bar is the parties' chosen instrument of the definitive settlement of grievances under the Agreement, it is enforceable under § 301.

*General Drivers Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

In this case, the arbitration process provided for by the collective bargaining agreement is expressly stated to be final and binding. The subsequent settlement in which Rockwell agreed to abide by the arbitration decision lends further support to the contention that the parties intended the arbitration decision to be final and binding. Thus, absent some special reason for not enforcing the Kagel decision, the Union is properly seeking enforcement of the decision.

In an effort to prevent judicial intervention into the sole province of the arbitrator when a collective bargaining agreement provides for mandatory arbitration, the courts have developed two tests which must be met before a court will enforce any means chosen by the parties as a final and binding settlement of their differences. Although articulated in different forms, these tests serve the identical goal of preserving for the arbitrator the function of interpreting the provisions of the collective bargaining agreement.

The first test ensures that the arbitration decision is definite enough to prevent the Court from having to interpret the collective bargaining agreement in an effort to determine if the alleged violation is a breach of the agreement. The Third Circuit has articulated the first of the two tests: "To be judicially enforceable, however, a settlement agreement, like an arbitration award, must be sufficiently specific as to be capable of implementation." *United Mine Workers District No. 5 v. Consolidation Coal Co.*, 666 F.2d 806 (3rd Cir. 1981). In this case, the Kagel decision is quite specific and would be easily implemented. The Kagel decision contains a detailed discussion of exactly what types of work are designated as within the bargaining unit work which is to be performed only by union employees. There is more than sufficient guidance for the Court to determine if Rockwell is violating the collective bargaining agreement in the same manner as alleged in the grievance which gave rise to the Kagel decision.

The second test ensures that the arbitration decision will not be used to prevent or require conduct which the arbitrator did not contemplate when issuing the prior arbitration award. Although in agreement as to the existence of this requirement, the courts differ on the exact formulation of the test. The test applied by the Fifth Circuit was formulated by the court in *Oil,*

*Chemical and Atomic Workers International Union, Local No., 4–16000 v. Ethyl Corp.,* 644 F.2d 1044 (5th Cir.1981).

[T]he test that best accommodates the interests of the union and management is whether or not the current conduct is arguably permissible under the relevant provision collective bargaining agreement. If, based on the evidence at trial, it is not even arguable that the current facts fall outside the prohibition or within an exemption of the article in question, then a court can safely conclude that the defendant's conduct does not differ materially from the previously condemned action, and thus, that the defendant is committing a "like" violation of the bargaining agreement, *in violation of the prior arbitration award.*

*Id.* at 1051.

A different, but similar, test is applied by the Third Circuit:

Federal courts are bound to exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution and when enforcement of an arbitration award or settlement agreement is sought under Section 301, the court must be able to say "with positive assurance" that the award or settlement was intended to cover the dispute.

*United Mine Workers of America District No. 5 v. Consolidation Coal Co.,* 666 F.2d 806, 811 (3rd Cir.1981).

This Circuit has yet to articulate a specific test. However, this Court need not expressly adopt a particular test because the result in this case is the same under either test. When the facts are taken in the light most favorable to the Union, as they must be on this motion, the Union is seeking to enjoin Rockwell from committing exactly the same type of violation that gave rise to the Kagel decision and the subsequent settlement based on the Kagel decision. Thus, if at trial this Court grants relief to the Union, it will not be interpreting the collective bargaining agreement, but rather the Court will be merely implementing the prior arbitration award which interpreted the collective bargaining agreement.

It should also be noted that the desire to prevent courts from usurping the power of an arbitrator is to be tempered by the overriding concern for the rapid and efficient settlement of disputes between unions and employers. As the First Circuit has aptly stated:

To require the Union to invoke the "time-consuming and burdensome grievance process again" in order that the parties might resolve the remnants of a dispute which has already once traveled that route would seriously undermine the chief policies underlying resort to those procedures in the first instance: the speedy, flexible and inexpensive resolution of labor disputes.

*Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.,* 628 F.2d 644, 649 (1st Cir.1980).

Therefore, the Court finds that plaintiff has met its initial burden of showing that the Court has subject matter jurisdiction under Section 301(a) of the National Labor Relations Act to enforce the prior arbitration award sufficient to overcome defendant's motion to dismiss, or in the alternative motion for summary judgment. If, at any subsequent time, the Court determines that the Union is seeking relief for acts not covered by the arbitration award, the Court can remand the case for arbitration.

WHEREFORE, premises considered, defendant's motion to dismiss, or in the alternative motion for summary judgment, is hereby DENIED.