**INTERNATIONAL UNION OF ELECTRICAL, RADIO, MACHINE WORKERS, AFL–CIO, and its Local 286, Plaintiffs, Appellees,**

v.

**GENERAL ELECTRIC COMPANY, Defendant, Appellee.**

**Nos. 7549, 7550.**

United States Court of Appeals, First Circuit.

July 6, 1970.

As Amended Aug. 10, 1970.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning & Pyle, Boston, Mass., was on brief, for International Union of Electrical, Radio, and Machine Workers, AFL–CIO and its Local 286.

Laurence S. Fordham, Boston, Mass., with whom Foley, Hoag & Eliot, Boston, Mass., was on brief, for General Electric Co.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

This is an action to compel arbitration of a company's right to transfer certain jobs from Massachusetts to Maine. Disputes of another nature regarding some of these jobs had been unsuccessfully processed through the grievance procedure, and, arbitration having been refused, an action was pending in New York to compel it. The proposed transfer resulted in a further grievance, in which the union claimed that Article XIV(2) of the bargaining agreement prohibited a job transfer until the prior disputes had been disposed of. Article XIV(2) reads as follows.

"The Company will not lock out any employee or transfer any job under

2. It is assumed that such Order will be entered, in Civil Action 69–147, when the record is returned to the district court.

dispute from the local Works, nor will the local Management take similar action while a disputed job is under discussion at any of the steps of the grievance procedure set forth in Article XIII, or if the matter is submitted to arbitration as provided in Article XV."

This grievance having been denied, the union sought arbitration to contest the transfer both of jobs listed in the grievance and of others, also allegedly still in dispute. Under Article XV(6) (a) arbitration may be had of "requests to arbitrate which involve * * * (ii) The claimed violation of a specific provision * * * of the National Agreement." The district court ordered arbitration, but only with respect to the thirteen jobs listed in the initial grievance. Both parties appeal.

The company, seeking reversal with regard to the transfers ordered to arbitration, at first persuaded us that the matter was complicated, and that these disputes might not be arbitrable. However, stripping off the fat leaves very little meat, and even that we find inedible. The brief is larded with quotations from Local 205, U.E., etc. v. General Electric Co., D.Mass., 1959, 172 F.Supp. 53, but omits the most relevant portion. The court there held that its inquiry in deciding the arbitrability of a question was limited to finding whether there were contractual provisions that governed the dispute.

> "[I]f provisions do exist, the court will not refuse to submit the matter even though it is 'crystal-clear' that the arbitrator could decide the merits only one way."

172 F.Supp. at 55. This conclusion is in accord with the statements of this court in Local 201, I.U.E., etc., v. General Electric Co., 1 Cir., 1959, 262 F.2d 265, 271, also cited by the company.

Viewing the facts favorably to the company, we will assume that it sought to make the present transfers for proper business reasons quite unconnected with the disputes. In addition, the company claims, in an extensive argument, that these underlying disputes are not arbitrable, and that the New York suit must end in its favor. It claims, in turn, that Article XIV(2) cannot apply where the underlying disputes are non-arbitrable, because such disputes do not come within the phrase, "submitted to arbitration" contained in Article XIV(2). It therefore asks that we find that the transfer of the disputed jobs is not arbitrable.

The company may well ultimately be right in its interpretation of Article XIV (2) as not applying to the underlying disputes alleged. However, it fails to tell us why it should be for the court to interpret the article, and to determine whether a factual condition of its applicability is the arbitrability of the underlying disputes. The arbitrator, who must decide whether conduct in "claimed violation of a specific provision" is such, is responsible for these tasks. It is enough for us to find that Article XIV (2) provides a rule for settling the permissibility of the transfer of these thirteen jobs under the contract. The company's affection for the language in the *Local 205* opinion must include all of it, the more particularly when we are persuaded that the portion we have quoted correctly stated the applicable law. Cases ante; Local 1912, I.A.M. v. United States Potash Co., 10 Cir., 1959, 270 F. 2d 496.

The union's demand to arbitrate job transfers not disputed in the prior grievance was correctly rejected by the district court. In providing that the court must determine "that the grievance upon which arbitration has been requested raises arbitrable issues," Article XV(4) (a) requires the union at least to make a prima facie showing under the contract. *Cf.* International Union of Electrical, etc. v. General Electric Co., 2 Cir., 1968, 407 F.2d 253, 259–261. In particular, it must make some showing of having satisfied the condition precedent to arbitration, that the issue to be arbitrated is the subject of a "fully processed" grievance. Article XV(1). The union's claim that there was conversation during the grievance hearing about jobs not specified in

the written grievance does not enlarge the scope of permissible arbitration. The contract does not provide for oral enlargement of a grievance, and the union does not dispute the company's statement that amendments require consent. These further jobs were not "processed." Nor could a contrary practice, or such a reading of Article XV(1), permit the court now to recite with "reasonable detail," as required by Article XV(4) (c), what further jobs were to be arbitrated. With respect to the transfers ordered to arbitration, the question is whether Article XIV(2) covers the transfer of jobs as to which unsettled disputes are in limbo between grievance proceeding and possible arbitration; this is a question of the meaning of Article XIV(2). But with respect to the additional jobs, the union cannot satisfy the clear contractual requirements for arbitration. On this record we are satisfied that it is not helped on its appeal by John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898.

Affirmed.