FRANKLIN L. SHEAHAN, JR., & others *vs.* SCHOOL COMMITTEE OF WORCESTER.

Worcester. April 7, 1971. — June 22, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

*Arbitration. Contract,* For arbitration, Collective bargaining contract. *Law or Fact. School and School Committee. Municipal Corporations,* Officers and agents. *Public Board.*

A party to a collective bargaining agreement is under no obligation to arbitrate a controversy arising thereunder unless the agreement so provides or he joins in an application for arbitration. [706]

Under G. L. c. 150, §§ 5 and 6, the board of conciliation and arbitration is not limited to making a binding written decision of any controversy submitted to it, but may merely "advise" the parties, or make recommendations. [707]

The interpretation of unambiguous language in a collective bargaining agreement was a matter of law. [707]

An agreement between the collective bargaining representative for the public school teachers of a city and its school committee for a "review" by the board of conciliation and arbitration under G. L. c. 150, §§ 5 and 6, of any controversy between the parties did not constitute an agreement by the committee to submit any controversy to the board for

arbitration, notwithstanding a provision of the agreement that the committee "reserves the right to insist upon a court determination of the jurisdiction of the arbitrator." [707–708]

In a proceeding in the Superior Court under G. L. c. 150C, § 10, to confirm the award of the board of conciliation and arbitration upon an application by the collective bargaining representative of the public school teachers of a city, in which the applicant alleged that the school committee of the city joined, to arbitrate a controversy between the parties, where it appeared that the city had a Plan E charter under c. 43, that the school committee consisted of seven members, including the mayor as its chairman by virtue of § 31, that the committee "did not vote to submit the matter to arbitration," and did not vote to appoint its chairman as its "agent for arbitration," but that the mayor signed his name to the application as "Employer, Chairman, School Committee," it was held that the action of the mayor did not bind the committee, and that as to it the board acquired no jurisdiction over the controversy. [708–709]

Where the record of a proceeding under G. L. c. 150C, § 10, showed that an application to confirm an award of the board of conciliation and arbitration was filed in the Superior Court on a certain date by the collective bargaining representative for the school teachers of a city, that such application incorporated a copy of the award, that the school committee of the city, the other party to the proceeding, filed a motion to vacate the award on the ground of lack of assent to arbitration within thirty days of the filing of the application to confirm, although more than thirty days after the making of the award, and where the record did not show whether or when a copy of the award was delivered to the school committee, it was to be assumed that a copy of the application including a copy of the award, was delivered to the school committee, and it was held that its motion to vacate was made seasonably "within thirty days after delivery of a copy of the award" within § 11 (b), if that section was applicable. [710]

APPLICATION filed in the Superior Court on October 30, 1969, for confirmation of an award by the board of conciliation and arbitration.

The case was heard by *Mitchell, J.*

*Henry P. Grady,* City Solicitor, for the defendant.

*Robert Weihrauch* for the plaintiffs.

QUIRICO, J. This is an application filed in the Superior Court under G. L. c. 150C, § 10,[1] to confirm an arbitration award made by the board of conciliation and arbitration (board) existing under G. L. c. 23, § 7. The plaintiffs are

---

[1] Chapter 150C in its entirety was first inserted in the General Laws by St. 1959, c. 546, § 1. This footnote shall apply whenever c. 150C or any section thereof is cited in this opinion.

three officers and members of the Educational Association of Worcester (Association) which is the collective bargaining representative for the public schoolteachers of Worcester. They sue as individuals and also in their representative capacities in behalf of all of the members of the Association. The defendant is the School Committee of Worcester (Committee).[2] The case is before us on the appeals of the Committee from an order and an interlocutory decree denying its motion to vacate the award, and from an order and a final decree confirming the award of the board. G. L. c. 150C, § 16.

At all times material to this case, the collective bargaining agreement between the Association and the Committee prescribed a "grievance procedure" for the handling of complaints relating to the matter of wages, hours and other conditions of employment. The grievance provision concluded as follows: "In the event that the employee alleging a grievance is not satisfied with the decision of the School Committee, the Association may file at the request of the employee an application with the State Board of Conciliation and Arbitration for further review under the provisions of Sections 5 and 6 of the General Laws, Chapter 150. The School Committee reserves the right to insist upon a court determination of the jurisdiction of the arbitrator."

A controversy arose over the alleged failure of the Committee to pay certain teachers for extracurricular assignments. Thereafter an application was filed with the board describing the controversy and then stating in pertinent part: "The undersigned hereby apply for arbitration of the controversy and submit the question: Did the School Committee violate Article 22, Section 13 by not paying Advisers the full $250.00 for September, 1967, through June, 1968 school year? If so, what shall the remedy be? . . . The parties hereby agree to abide by the decision of the Board in accordance with the law." The application

---

[2] When the application was filed, the city of Worcester was named as a party defendant, but the application was dismissed as to the city before the case was heard on the merits.

was signed by counsel for the Association and by "John M. Shea, Employer, Chairman, School Committee." In its decision the board referred to the application as "the joint application for arbitration of a controversy between" the Committee and the Association.

After holding a hearing on the application, the board rendered a written decision on August 20, 1969, as follows: "The Board finds that the School Committee did violate Article 22, Section 13 of the Collective Bargaining Agreement by not paying Advisers the full $250.00 for September 1967 through June 1968 school year. The Board therefore rules that the School Committee should pay the Advisers who have completed the required service the balance of money due for the period of time involved." It is this decision which the Association seeks to have the court confirm.

The Association's application for confirmation of the board's award was filed in the Superior Court on October 30, 1969. On November 13, 1969, the Committee filed a motion to vacate and dismiss the board's award and an answer to the Association's application to confirm the award. Both the motion and the answer alleged (a) that the board lacked jurisdiction to hear the matter for the reason, among others, that the Committee had never agreed to arbitrate the controversy, (b) that the Committee had offered to present evidence before the board that the Committee's chairman lacked authority to sign the application to the board for arbitration, and (c) that the board ruled that the chairman's signature was sufficient to confer assent and jurisdiction and did not permit further contest of its jurisdiction.

On November 18, 1969, the trial judge entered an interlocutory decree ordering that the Committee's motion to vacate the board's award be "dismissed because filed untimely under G. L. c. 150C, Sec. 11 (b)." Several days later the same judge heard the case on its merits. The hearing was limited to arguments by counsel directed principally to the issues of the board's jurisdiction to hear the matter and the timeliness of the Committee's attempt to raise the question of jurisdiction. Although no evidence was pre-

sented, the stenographic record of the hearing is reproduced in the record before us. It shows that the parties stipulated in open court that "the Worcester School Committee did not vote to submit the matter to arbitration," and also that "there was no vote of the School Board appointing the Mayor as their agent for arbitration."[3] The mayor of the city was by virtue of that office also a member and the chairman of the Committee. On December 29, 1969, the judge filed a decision which included an order made pursuant to the provisions of c. 150C, § 10, confirming the board's award of August 20, 1969. On February 5, 1970, he entered a final decree to the same effect. The Committee seasonably filed separate appeals from the order and the final decree. G. L. c. 150C, § 16.

In his decision of December 29, 1969, the judge concluded (a) that the combined effect of the Committee's entering into the collective bargaining agreement and the act of its chairman in signing the application for arbitration filed with the board was that the Committee had obligated itself to arbitrate the controversy, and (b) that if there was a question of jurisdiction, the Committee did not act within the time limits prescribed by c. 150C, §§ 2 (b), 10, 11 and 12, and therefore was precluded from raising that question. For the reasons hereinafter stated, we disagree with these conclusions.

1. *Obligation to arbitrate.* The Committee was under no obligation to arbitrate the controversy unless it agreed to do so, either by some provision of the collective bargaining agreement, or by joining in the application to the board for arbitration. See *Itek Corp.* v. *McEnness,* 340 Mass. 409, 412, and *Glenn Acres, Inc.* v. *Cliffwood Corp.* 353 Mass. 150, 154. The question to be decided at this point is whether the Committee agreed by either method to arbitrate.

2. *Collective bargaining agreement.* General Laws c. 150C,

---

[3] When the Committee requested that the judge report the material facts found by him, he filed a statement that he could not make one because he "was not obligated to find any facts in this matter and did not base . . . [his] decision on any material facts."

§ 1, provides that: "A written agreement or a provision in a written agreement between a labor organization . . . and an employer . . . to submit to arbitration any existing controversy or any controversy thereafter arising between parties to the agreement . . . shall be valid, enforceable and irrevocable" with exceptions not here material. The agreement in this case provided, "the Association may file . . . an application with the . . . [board] for further review under the provisions of Sections 5 and 6 of the General Laws, Chapter 150."

General Laws c. 150, § 6, prescribes the form and content of an application filed with the board, the signatures required thereon, and the notice required of a hearing to be held thereon. Section 5, as appearing in St. 1938, c. 364, § 2, provides that upon receiving such an application the board shall "visit the place where the controversy exists and make careful inquiry into its cause, . . . hear all persons interested who come before it, advise the respective parties what ought to be done or submitted to by either or both to adjust said controversy, and make a written decision thereof." That language when read alone contemplates and permits action by the board in the form of recommendations or advice to the parties, and does not limit the board's action to a binding decision. This conclusion seems compelled when the quoted language is read with (a) the provision of § 6 permitting an application to be filed with the board on the signature of either or both parties to a controversy, and (b) the provision of § 5 that the board's "decision shall for six months be binding upon the parties who join in said application," or longer if the parties agree. Neither § 5 nor § 6 contains the word "arbitration."

The language of the collective bargaining agreement was selected by the parties. They said that the Association could ask the board to "review" a controversy under §§ 5 and 6, rather than to "arbitrate" the controversy. The language of the agreement is not ambiguous. The interpretation of the language is a matter of law for the court to decide. *Tri-City Concrete Co. Inc.* v. *A. L. A. Constr. Co.* 343 Mass.

425, 427.  *Charles L. Hazelton & Son, Inc.* v. *Teel,* 349 Mass. 617, 621.  We hold that the language quoted above from the collective bargaining agreement does not constitute an agreement by the Committee that it will submit any controversy to the board for arbitration.  The inclusion in the agreement of the Committee's reservation of a right to insist upon a court determination of the jurisdiction of "the arbitrator" does not require a different conclusion.

3. *Application to board for arbitration.*  Although not contractually obligated to submit any controversy with the Association to the board for arbitration, the Committee could obligate itself to do so by making an application to the board to arbitrate such a controversy.  The Association contends that the Committee did that when the latter's chairman signed the application filed with the board in this case.  The Committee contends that this action by the chairman was not authorized by it and therefore does not bind it. The parties stipulated in argument before the judge that the Committee did not vote to submit the controversy to arbitration, and did not vote to appoint its chairman as its agent for arbitration.  Much time was taken up in argument and in colloquies between the judge and counsel on whether the Committee had any rules which governed the power of its chairman to act for and bind the Committee, or whether the act of the chairman constituted the act of the Committee and therefore constituted a consent to arbitrate the controversy.  It appeared that the Committee had no such rules.  This is a matter which is governed by statute, and no rule of the Committee could produce a different result. A Plan E charter (G. L. c. 43, §§ 93–116) was adopted by the city of Worcester in 1950 and is still in effect.  *Worcester* v. *Directors of the Worcester Free Pub. Library,* 349 Mass. 601, 603.  Under the charter, the responsibility for the public school system is vested in the School Committee.  G. L. c. 43, §§ 31–36, and c. 71, § 37.  The Committee consists of seven members including the mayor who is its chairman.  It is therefore subject to G. L. c. 4, § 6, Fifth, which provides: "Words purporting to give a joint authority to, or to direct

any act by, three or more public officers or other persons shall be construed as giving such authority to, or directing such act by, a majority of such officers or persons." *Clark* v. *City Council of Waltham,* 328 Mass. 40, 41, and cases cited. *Albano* v. *Selectmen of So. Hadley,* 341 Mass. 494, 496. *Moran* v. *Secretary of the Commonwealth,* 347 Mass. 500, 504. The action of Mayor Shea in signing the application for arbitration as chairman of the Committee did not bind the Committee. The fact that he was chairman by virtue of being the mayor of the city (G. L. c. 43, § 31) does not change the situation. The board did not acquire jurisdiction over the controversy as to the Committee by reason of the signing of the application by the Committee's chairman.

4. *Timeliness of jurisdictional issue.*[4] The remaining question is whether the Committee, despite the fact that it did not, either by the collective bargaining agreement or by joining in any application for arbitration, submit the controversy to the board for arbitration, is precluded from raising the question of the board's jurisdiction because of any delay in doing so. The Committee raised the issue at the outset of, and throughout the proceedings before, the board. It did not seek an order from the Superior Court to stay proceedings by the board on the ground that there was no agreement to arbitrate. Its first court action to vacate the board's award of August 20, 1969, was on November 13, 1969, when it filed its motion to vacate and dismiss the award.

There is authority for holding that when "[t]he validity of . . . [an] award is challenged not merely on the ground that the arbitrators have made an erroneous decision but upon the ground that they had no right to make any decision

---

[4] In its motion to vacate the award and in its answer to the Association's application to affirm the award, the Committee contends that the board lacked jurisdiction to arbitrate the controversy. The judge in his decision concluded that the board had jurisdiction, and that in any event the Committee's attempt to raise the issue of jurisdiction was not seasonably made. While we use the word "jurisdiction" we do so for consistency of terminology only. However, the issue to which the parties and the judge refer as the issue of "jurisdiction" is actually the issue whether the Committee ever assented to submit the controversy in question to the board for arbitration. We use the word "jurisdiction" in that sense only in this opinion.

at all . . . [or] that the board was not empowered to hear
and determine the matter," that point is open, and "[i]f
authority was lacking, then the award is void." *J. F.
Fitzgerald Constr. Co.* v. *Southbridge Water Supply Co.* 304
Mass. 130, 134. In *M. S. Kelliher Co.* v. *Wakefield,* 346
Mass. 645, 647, we said that "the question whether the
award was in excess of the authority conferred on the ar-
bitrators is always open." See *Boyden* v. *Lamb,* 152 Mass.
416, 419. *Burns* v. *Thomas Cook & Sons, Inc.* 317 Mass.
398, 401.[5]

The Association contends that the Committee is precluded
from raising the issue of jurisdiction because it did not do so
within the time limited by c. 150C, § 11 (b). Section 11 (a)
(5) permits a party to an award to apply to the Superior
Court to vacate it on the ground that "there was no ar-
bitration agreement," but § 11 (b) says that such an ap-
plication "shall be made within thirty days after delivery
of a copy of the award to the applicant" with exceptions not
here material. The first effort by the Committee to vacate
the award of August 20, 1969, was its motion filed in court
on November 13, 1969. The record before us does not show
whether or when a copy of the board's award was delivered
to the Committee. It shows the filing of the Association's
application in the Superior Court on October 30, 1969, for
confirmation of the award. That application incorporated a
copy of the board's award. If we assume that a copy of the
application and the award incorporated therein were then
delivered to the Committee, it follows that the Committee
filed its motion to vacate the award within thirty days
thereafter, viz., on November 13, 1969. On such a record,
the Committee complied with the time limit of § 11 (b), if
it applies to this case despite our holding that there was no
collective bargaining agreement to submit the controversy
in question to arbitration.

In summary, we hold (a) that neither the collective bar-

---

[5] None of these cases involved G. L. c. 150C. Neither did they involve
G. L. c. 251 (Uniform Arbitration Act for Commercial Disputes, as appear-
ing in St. 1960, c. 374, § 1).

gaining agreement nor the application signed by its chairman constituted an assent by the Committee to submit its controversy with the Association to the board for arbitration; (b) that the board did not have jurisdiction to arbitrate the controversy and therefore its award thereon is not enforceable against the Committee; and (c) the issue of the board's lack of jurisdiction was seasonably raised by the Committee within the time limited by c. 150C, § 11 (b), if applicable thereto.

The order and interlocutory decree denying the Committee's motion to vacate the award, and the order and final decree confirming the award are reversed. A new decree is to be entered vacating the award.

*So ordered.*