The SHEET METAL & AIR CONDITION-
ING CONTRACTORS ASSOCIATION
OF the BUILDING TRADES EM-
PLOYERS ASSOCIATION and the
Limbach Co., Plaintiffs,

v.

SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL
UNION 17, Defendants.

Civ. A. No. 85–2894–W.

United States District Court,
D. Massachusetts.

Aug. 26, 1985.

Order Authorizing Interlocutory Appeal
Oct. 15, 1985.

John D. O'Reilly, III, Worcester, Mass.,
for plaintiffs.

Paul F. Kelly, Segal, Roitman & Cole-
man, Boston, Mass., for defendants.

OPINION

WOLF, District Judge.

Plaintiffs, an employer and its trade as-
sociation, request, in effect, that the court
vacate an arbitration decision that a collec-
tive bargaining agreement between the em-
ployer and defendant union is invalid be-
cause of mutual misrepresentation and mu-
tual mistake. Plaintiffs also seek injunc-
tive relief and damages. Jurisdiction ex-
ists under § 301(a) of the Labor Manage-
ment Relations Act of 1947 as amended
(the "LMRA"), 29 U.S.C. § 185.

On July 19, 1985, the court entered a
temporary restraining order to prevent a
cessation of work, which was modified and
continued on July 23, 1985. On July 25,
1985, a hearing on plaintiffs' application for
a preliminary injunction commenced. It
was continued to permit discovery and
briefing of issues relating to the merits of
the case and to the propriety of preliminary
injunctive relief. On August 14, 1985, the
hearing on the application for a preliminary
injunction was, with the consent of the
parties, consolidated with the trial of the
merits of this action. The trial was com-
pleted on August 15, 1985, when a prelimi-
nary injunction was issued.

As described below, the court has decid-
ed to (1) vacate the arbitrators' decision
that the collective bargaining agreement is
invalid; (2) remand this matter to the arbi-
trators for clarification and completion of
their decision with regard to a remedy for
the violation of the collective bargaining
agreement which they found; (3) terminate

the preliminary injunction because it no longer appears necessary; and (4) retain jurisdiction pending completion of the reopened arbitration proceedings.

## I. FINDINGS OF FACT

The court hereby finds the facts of this case as follows:

1. This action was initiated on July 19, 1985, by the Sheet Metal & Air Conditioning Contractors Association ("SMACCA") of the Building Trades Employers Association ("BTEA") and one of its members, the Limbach Company, Inc. ("Limbach"). The defendant is the Sheet Metal Workers International Association, Local Union 17 ("Local 17"). Limbach is a Pennsylvania corporation with branches throughout the country. Limbach's operation in Woburn, Massachusetts is involved in this case. The Woburn branch does various types of construction work, including sheet metal fabrication and installation.

2. When this dispute arose in 1984, Limbach and Local 17 were parties to a multiemployer collective bargaining agreement negotiated on their behalf by SMACCA and the Sheet Metal Workers International Association ("SMWIA"), an international union of which Local 17 is a member. The contract, which was in effect from September 1, 1982, to August 31, 1984, covered several counties in Eastern Massachusetts (the "1982 Agreement"). When the 1982 Agreement expired, Local 17 went on strike for seven weeks. The strike was settled and a new agreement was reached in late October, 1984 (the "1984 Agreement"). The 1984 Agreement was effective as of September 1, 1984, and to August 31, 1986.

3. Limbach is a wholly-owned subsidiary of Limbach Constructors, Inc., which is a wholly-owned subsidiary of the Limbach Corporation. In 1983, Jovis Constructors, Inc., another wholly-owned subsidiary of Limbach Constructors, Inc., purchased all of the capital stock of Harper Plumbing and Heating Company ("Harper"). Harper is a non-union company operating exclusively in the Orlando, Florida area.

4. On March 27, 1984, the business manager of Local 17 wrote Limbach that the acquisition of a non-union company was in violation of Article VIII, § 5 and other provisions of the 1982 Agreement.[1] The company denied it had violated the contract. Local 17 filed a grievance under the procedures provided by Article X of the 1982 Agreement.[2] The grievance charged

1. Article VIII, § 5 of the 1982 Agreement states, in pertinent part,

[T]he Employer agrees that journeymen sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the Local Agreement covering the territory in which such work is performed or supervised. The other provisions referred to in the March 27, 1984, letter define the wage scale and working conditions of the Local Agreement, referenced in Article VIII, § 5.

2. Article X of the 1982 Agreement established a four-step grievance procedure, which is substantially the same in the 1984 Agreement. A grievance must be filed within 30 days of the occurrence giving rise to the grievance, or if the occurrence was not ascertainable, first knowledge of the facts giving rise to the grievance. The union and employer must initially negotiate the dispute. If the negotiations are unsuccessful, either party may appeal to a Local Joint Adjustment Board ("LJAB"), consisting of an equal number of union and employer representatives. Either party may then appeal the LJAB

decision to a special panel consisting of a representative from SMWIA and SMACCA. The final step in the process is appeal to the National Joint Adjustment Board ("NJAB"), which is established by SMWIA and SMACCA and consists of an equal number of representatives from both organizations.

Under the 1982 Agreement, the LJAB and NJAB were "empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation and, if it is believed warranted, to direct that the involved agreement ... be cancelled." The language expressly authorizing cancellation as a remedy was deleted from the 1984 Agreement, which provides that the LJAB and NJAB "are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation." A provision contained in the 1982 Agreement which authorized cancellation as a remedy for noncompliance with a decision of the LJAB or NJAB was also deleted from the 1984 Agreement and from the revised Procedural Rules of the National Joint Adjust-

that Limbach had structured its corporate organization for the purpose of becoming a "double-breasted company," that is, a company with union and non-union operations. Local 17 also requested as a remedy that Limbach divest itself of Harper and pay liquidated damages in an amount equal to the difference between the wage and benefit package it was providing for Local 17 sheet metal workers and that which it had paid to Harper sheet metal employees since the acquisition of Harper. Local 17 did not contest the validity of the 1984 Agreement with Limbach.

When the parties failed to reach agreement on their own, Limbach appealed to the Local Joint Adjustment Board (the "LJAB"). A hearing was scheduled for November 20, 1984. On November 19, 1984, Local 17 amended its grievance to include a claim that the acquisition of Harper also violated Article II, § 3 of the 1984 Agreement.[3]

5. At the LJAB hearing, Limbach was represented by Thomas Gunning, the Executive Director of the Boston Chapter of SMACCA. Gunning agreed that the submission of the grievance under the 1984 Agreement was timely, but argued that the entire matter was not properly before the LJAB. The next day Gunning sent a memorandum to the LJAB elaborating Limbach's position. Limbach asserted that since Harper and Limbach were not a single employer, Harper's operations were not covered under either the 1982 or 1984 Agreements and, therefore, Limbach had not violated either contract. Limbach also asserted that, in any event, this matter was a representation issue that had to be decided by the National Labor Relations Board ("NLRB"), rather than the LJAB. Limbach also claimed that it had not violated the 1982 or 1984 Agreements because Harper was not within the geographical area covered by the Agreements.

The LJAB deadlocked. Local 17 appealed for a Panel Hearing. Ultimately, this

---

ment Board for the Sheet Metal Industry (the "NJAB Rules").

The NJAB Rules were incorporated by reference in the 1982 Agreement and in the 1984 Agreement, which each stated that, "Submission(s) shall be made and decisions rendered under such procedures as may be prescribed by such Board." The NJAB Rules at all times stated that an NJAB decision "shall be confined to the disputed issue or issues presented to it ..."

**3.** Article II, § 3 states:

(a) The Employer agrees that no evasion of the terms, requirements and provisions of the Standard Form of Union Agreement, including all addenda attached thereto, will take place by the setting up of another business to do work covered by this Agreement, or in any other way attempt to or actually evade or nullify responsibility hereunder. If and when the Employer shall perform any work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer through its officers, directors, partners or stockholders, exercises either directly or indirectly, management, control or majority ownership of such other entity, the terms and conditions of the Agreement shall be applicable to all such work.

This clause shall only be applicable to job site work as that term is used in the construction

industry proviso to Section 8(e) of the National Labor Relations Act.

(b) The Employer further agrees that if and when it performs prefabrication work otherwise covered by the Standard Form of Union Agreement, including all addenda attached thereto, under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer through its officers, directors, partners or stockholders, exercises either directly or indirectly, management, control or majority ownership of such other entity, the employees of such other entity shall receive not less than the prevailing wage for comparable sheet metal fabrication, as established under the terms of this Agreement.

This is not to be interpreted to exclude any customer of the company from purchasing said fabrication.

(c) The parties agree that disputes concerning the meaning and application of section 1 and 2 hereof shall be resolved in accordance with Article X and without resort to strike or lockout.

(d) If any word/sentence/paragraph or section of this language is found to be illegal that portion will be removed from this article or rewritten to comply with the law.

The remainder of this article will stand as negotiated.

step was waived by the SMWIA and SMACCA panelists, and the grievance was submitted directly to the National Joint Adjustment Board (the "NJAB").

6. The NJAB met on February 6, 1985. The Limbach-Local 17 dispute was consolidated with two other cases involving Limbach Constructor's subsidiaries and local chapters of the SMWIA in Pittsburgh and California. These cases shared the common issue of whether the Harper acquisition violated the 1982 Agreement between SMACCA and SMWIA. The issue of whether the 1984 Agreement was violated was unique to the Limbach-Local 17 dispute.

7. At the NJAB hearing, Limbach raised several procedural objections, including the claim that the issue of whether the Harper acquisition violated the 1984 Agreement was untimely when submitted to the LJAB because (a) it was not raised within 30 days after Limbach purchased Harper, as required under Article X, § 1 and (b) because it was filed only a day before the LJAB hearing, rather than presented at step one of the grievance process. Limbach also asserted that whether the Harper acquisition violated Article II, § 3 was a question for the NLRB, and not the NJAB. The NJAB disagreed and found that these matters were properly before it for decision.

8. On February 8, 1985, the NJAB issued a three-paragraph decision (the "NJAB decision") in which it:

(1) deadlocked concerning the issue whether Limbach had violated the 1982 Agreement, which was common in all three cases;

(2) found that "the acquisition and operation of Harper Plumbing and Heating Company, Inc. violated the express language of Article II, Section 3 of the current [1984] agreement between Local Union No. 17 and Limbach Company, Inc.";[4] and

(3) found that the 1984 Agreement between Limbach and Local 17 was "either based on mutual misrepresentation of material facts or mutual mistake, or has been executed in circumstances in which there plainly was no meeting of the minds between said contracting parties. Therefore, the current agreement between Local Union 17 and Limbach Company, Inc. is not a valid and binding contract between the parties, and is of no force and effect."

9. The issue whether there was a valid collective bargaining agreement between the parties was not raised by Local 17 before the NJAB or earlier.[5] Nor was it raised by anyone else prior to its emergence in paragraph three of the NJAB decision.

10. At the request of SMACCA and Limbach, on April 8, 1985, the NJAB issued a clarification of its decision, stating that paragraph three invalidated the 1984 Agreement only as between Limbach and Local 17, rather than as between other employers in the Boston Chapter of SMACCA and Local 17.

11. On April 18, 1985, Local 17 informed SMACCA that it would no longer negotiate and/or bargain collectively with SMACCA with regard to Limbach.

Limbach responded that paragraph three of the NJAB decision had no force or effect because (a) the issue of whether a valid contract existed was not submitted to the NJAB as required by the collective bargaining agreement incorporating the NJAB Rules; (b) Local 17's submissions to the LJAB and NJAB conceded that Limbach and Local 17 were parties to a collective bargaining agreement; and (c) the parties acknowledged the existence of a collective bargaining agreement by continuing to operate under the terms and conditions of the 1984 Agreement after the NJAB decision was issued.

---

4. Plaintiffs' Complaint did not request judicial review of this aspect of the NJAB decision.

5. Local 17 stipulated to this fact.

In response, Local 17 asserted that the NJAB decision was binding on Local 17 and Limbach. Thus, the union was withdrawing from its collective bargaining relationship with Limbach.

12. On July 1, 1985, the General President of SMWIA notified Local 17, Limbach, and SMACCA that he was withdrawing Local 17 from its collective bargaining relationship with Limbach.

13. On July 12, 1985, SMACCA filed a grievance and sought a hearing before the LJAB to interpret the NJAB decision and to resolve what it characterized as the irreconcilable conflict between the NJAB determinations that the 1984 Agreement was both violated and invalid.

14. On Thursday, July 18, 1985, the shop steward of Local 17 informed Limbach that its members would cease working with Limbach as of Monday, July 22, 1985.

15. On July 18, 1985, SMWIA's General President sent a letter to each member of Local 17 advising him that no contract existed between Limbach and Local 17, that the union no longer had a collective bargaining relationship with Limbach, and that members of Local 17 and of sister local unions in whose territorial jurisdiction Limbach was performing work were expected "to comply with their union obligations as good union men."

16. On Friday, July 19, 1985, Limbach and SMACCA commenced this action and sought a temporary restraining order to prevent a cessation of work by Local 17 members the following Monday. This initiated the proceedings, described earlier, leading to this decision.

## II. CONCLUSIONS OF LAW

1. *Plaintiffs' Claim is Not Barred by the Applicable Statute of Limitations.*

■ Plaintiffs ask, in effect, that this court vacate paragraph three of the NJAB decision. The question of the validity of the collective bargaining agreement between Limbach and Local 17 was not submitted for arbitration. Therefore, plain-tiffs assert, the NJAB lacked jurisdiction and authority to decide that the agreement between Limbach and Local 17 was invalid because it was based on either mutual misrepresentation or mutual mistake.

Local 17 contends that plaintiffs' claim is barred by Massachusetts law, Mass.Gen. Laws ch. 150C, § 11(b), which provides that actions to vacate an arbitration award on enumerated grounds must be instituted within thirty days of delivery of the award. This action was commenced long after the thirty-day period expired. Although Local 17's contention is initially engaging, it is incorrect. Plaintiffs' claim is timely brought.

Section 301 of the LMRA confers jurisdiction upon the federal district courts over suits upon collective bargaining contracts, but the LMRA itself contains no limitations period. *Locals 2222, 2320–2327, International Brotherhood of Electrical Workers, AFL–CIO v. New England Telephone & Telegraph Co.,* 628 F.2d 644, 650 (1st Cir. 1980). " '[T]he timeliness of a § 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.' " *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1980) (quoting *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966) ). Thus, the court must initially determine what limitations period is provided by Massachusetts law for actions to vacate an arbitration award on the ground that the arbitrators decided an issue not submitted to them.

The Massachusetts statute, Mass.Gen. Laws ch. 150C, § 11(b), does require that applications to vacate an award on enumerated grounds be made within thirty days of its receipt. However, where, as here, the plaintiffs contend that the arbitrators were without jurisdiction over the matter decided, the Massachusetts courts have held that, "a petition to vacate ... is not subject to the thirty day filing requirement of § 11(b). *M.S. Kelliher Co. v. Wakefield,* 346 Mass. 645, 647 [195 N.E.2d 330] (1964)

("the question whether the award was in excess of the authority conferred on the arbitrators is always open'). *See also J.F. Fitzgerald Constr. Co. v. Southbridge Water Supply Co.*, 304 Mass. 130, 134 [23 N.E.2d 165] (1939). *Sheahan v. School Comm. of Worcester*, 359 Mass. 702, 709–11 [270 N.E.2d 912] (1971). *Greene v. Mari & Sons Flooring Co.*, [362 Mass. 560, 562 [289 N.E.2d 860] (1972) ]." *Painters Local No. 257 v. Johnson Industrial Painting Contractors*, 16 Mass.App. 67, 72, 448 N.E.2d 1307, 1310–11 (1983), *app. den.*, 393 Mass. 1102, 453 N.E.2d 1231. *Painters* was a case in which the arbitrators acted on a controversy arising from facts occurring outside the geographical area covered by the contract and before the agreement was executed. Because the arbitrators were not empowered by the agreement to hear the dispute, the court determined that they lacked jurisdiction and that plaintiff's claim was timely, although filed more than thirty days after the award. *Painters*, 16 Mass.App. at 73, 448 N.E.2d at 1310–11.

The *Painters* characterization of the question of whether an issue was within the power of an arbitrator to decide as a "jurisdictional" question is compatible with the conclusion of federal courts in comparable cases. *Western Electric Company, Incorporated v. Communications Workers of America, AFL–CIO*, 450 F.Supp. 876, 881 (E.D.N.Y.), *aff'd without opinion*, 591 F.2d 1333 (2d Cir.1978) ("The powers of an arbitrator are defined by agreement of the parties: the question they submit both establishes and limits the arbitrator's jurisdiction."); *Delta Lines, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local 85*, 409 F.Supp. 873, 875 (N.D.Cal. 1976) ("The limits of an arbitrator's jurisdiction are defined by the collective bargaining agreement and the issues submitted by the parties.").

Massachusetts law characterizes plaintiffs' claim as one raising a jurisdictional issue and, therefore, as timely brought.[6] This characterization, and the conclusion it dictates, are also appropriate as matters of federal law.[7] The action is, therefore, timely brought.

2. *The Issue of the Validity of the Collective Bargaining Agreement Was Not Submitted for Arbitration; the NJAB, Therefore, Exceeded its Jurisdiction in Deciding This Issue.*

■■■ The parties have stipulated that the question whether the collective bargaining

---

**6.** The court reaches this conclusion concerning Massachusetts law notwithstanding the broad language of the First Circuit Court of Appeals *dicta* in *Derwin v. General Dynamics Corporation*, 719 F.2d 484, 489 (1st Cir.1983), concerning the Massachusetts statute of limitations for actions to vacate an arbitrator's award. In *Derwin*, the court was addressing the question of the Massachusetts statute of limitations for actions to confirm an arbitrator's award under Mass.Gen.Law ch. 150C, § 10. The court compared actions to confirm with actions to vacate and, in the process, stated, "... the Massachusetts statute subjects [actions to vacate] to a short 30-day statute of limitations. *See* Mass. Gen.Laws ch. 150C, §§ 11(b), 12(a), ..." and that 30-day limit "virtually eliminates any prospect of a successful challenge to an award after the 30-day period...." *Id.* at 489. The Court of Appeals did not state that it found that these provisions completely eliminate the possibility of a successful challenge. Of more importance, the court in *Derwin* did not refer to, and may not have had the benefit of, the *Painters* case, which was decided the week *Derwin* was argued. In any event, this court is obliged to determine, in part, how the Massachusetts courts would decide the issue of timeliness on the facts of this case. For the reasons set forth above, the court finds, notwithstanding the *dicta* in *Derwin* and the logic of it, that this action would be deemed timely brought by the courts of the Commonwealth.

**7.** If Massachusetts law did not characterize the question of whether a matter decided had been submitted for arbitration as a jurisdictional issue and, therefore, applied a thirty day statute of limitations, this court would address the further question of whether to adopt that characterization as a matter of federal law because "the characterization of a section 301 action for the purpose of selecting that appropriate state limitations provision is ultimately a question of federal law, though the characterization that state law would impose should not be rejected unless it 'is unreasonable or otherwise inconsistent with national labor policy.' *Hoosier Cardinal, supra*, 383 U.S. at 706 [86 S.Ct. at 1113]." *Locals 2222*, 628 F.2d at 650.

agreement was invalid was neither part of the original grievance nor discussed in the NJAB proceeding. Rather, it emerged for the first time in paragraph three of the NJAB's decision. As set forth below, the NJAB exceeded its jurisdiction in deciding that the 1984 Agreement was invalid because this issue was not submitted for arbitration. Paragraph three of the NJAB decision must, therefore, be vacated.

The court recognizes that in deciding whether to vacate paragraph three of the NJAB decision, the permissible scope of its review is narrow. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (the "Steelworkers triology"). The Supreme Court held in *Warrior & Gulf* that,

> [T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator the power to make the award he made.

*Id.* 363 U.S. at 582, 80 S.Ct. at 1352. However, an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361.

The Court of Appeals for the First Circuit has interpreted the applicable standards to provide that,

> "The courts are precluded from considering factual or legal issues which are by voluntary agreement made the subject of arbitration. Judicial intrusion is restricted to extraordinary situations indicating abuse of arbitral power or exercise of power beyond the jurisdiction of the arbitrator."

*Mobil Oil Corporation v. Local 8–766, Oil, Chemical & Atomic Workers International Union,* 600 F.2d 322, 326 (1st Cir.1979) (quoting *Local Union No. 251 International Brotherhood of Teamsters v. Narragansett Improvement Co.,* 503 F.2d 309, 312 (1st Cir.1974)). This is such an extraordinary situation.

The 1984 Agreement contains provisions which establish and limit the NJAB's jurisdiction. Among these is Article X, § 4 which incorporates by reference the NJAB Rules.[8] Those Rules expressly state that, "The decision of the Board shall be confined to the disputed issue or issues presented to it unless withdrawn or modified by the mutual consent of the parties in writing." Joint Exhibit 25, at 12. The Rules also provide that the Board's decisions "shall be confined to the specific issues presented by the parties to the Local Joint Adjustment Board," *id.* at 7, and confined in general to the evidence produced "at the local hearing," *id.* at 7–8. Thus, the 1984 Agreement, by incorporation of the NJAB Rules, limits the NJAB's jurisdiction to those issues timely submitted to the arbitration process.

The issue of invalidity of the 1984 Agreement, however, was not submitted for arbitration at any time. Thus, the NJAB exceeded the jurisdiction granted to it by the 1984 Agreement in deciding the issue of

---

**8.** Article X, § 4 of the collective bargaining agreement provides, in pertinent part, that, "Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board. *Submissions shall be made and decisions rendered under such procedures as may be prescribed by such Board.*" (Emphasis added.)

The NJAB promulgated the revised Procedural Rules of the National Joint Adjustment Board for the Sheet Metal Industry (the "NJAB Rules") to be applicable to its proceedings pursuant to the 1984 Agreement and comparable collective bargaining agreements.

invalidity. *Courier-Citizen v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 281 (1st Cir.1983) ("While an arbitrator has broad power to fashion remedies on the issues the parties have empowered him to resolve, ... he lacks authority to decide questions the parties have not agreed to submit to him."); *Delta Lines, Inc.*, 409 F.Supp. at 875 ("the agreement by which these parties contracted to settle such disputes explicitly provides that '[t]he decision of the arbitrator shall be specifically limited to the matter submitted to him'"); *International Union of Electrical, Radio, Machine Workers AFL–CIO v. General Electric Company*, 429 F.2d 412, 413–14 (1st Cir.1970) (holding that issues not raised at the initial stage of the grievance procedure could not, without the consent of all parties, be properly decided at a later stage.)

The contractual provision limiting the NJAB's jurisdiction to matters properly submitted mirrors, rather than modifies, the standards defining the jurisdiction of arbitrators established by federal statute and case law. Section 10(d) of the Federal Arbitration Act, 9 U.S.C. § 10(d), provides for setting aside an award if the arbitrators exceeded their power by deciding an issue not submitted to them. *Western Electric*, 450 F.Supp. at 881; *Totem Marine Tug & Barge v. North American Towing Inc.*, 607 F.2d 649, 651 (5th Cir. 1979).

Although not relying upon § 10(d), courts in other labor cases have held that, "The limits of an arbitrator's jurisdiction are defined by the collective bargaining agreement and the issues submitted by the parties.... [A]n arbitration award which clearly goes beyond the issues submitted by the parties is unenforceable." *Delta Lines, Inc.*, 409 F.Supp. at 875; *Courier-Citizen*, 702 F.2d at 281; *Retail Store Employees Union Local 782 v. Sav-On Groceries*, 508 F.2d 500, 502–503 (10th Cir. 1975) ("the issue of back pay was not submitted to the arbitrator here and ... the trial court did not err in finding the arbitration award 'null and void' insofar as it applied to that issue"); *Textile Workers Union of America v. American Thread Co.*, 291 F.2d 894, 897 (4th Cir.1961) (in the Steelworkers trilogy, "the Court reaffirmed the long established doctrine that an arbitration award is unenforceable if it exceeds the scope of the submission").

The *Enterprise Wheel* decision, particularly, supports the Fourth Circuit's conclusion in *Textile Workers* concerning the import of the Steelworkers trilogy for this issue. After expressing the generally applicable standards, the Supreme Court stated in reversing a refusal to enforce an award that, "[W]e see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas *marked out for his consideration. It is not apparent that he went beyond the submission.*" 363 U.S. at 598, 80 S.Ct. at 1361 (emphasis added). This analysis indicates that where, as here, it is apparent that the arbitrators went beyond the submission, the Supreme Court too would find that the award is not entitled to judicial enforcement.

The NJAB exceeded its jurisdiction in addressing an issue not submitted to it and deciding that the 1984 Agreement was invalid. To the extent that the NJAB disregarded the limitation on its jurisdiction, imposed by incorporation of the NJAB Rules in the 1984 Agreement as well as by federal law, its decision does not draw its esence from the collective bargaining agreement. Thus, this Court must decline to enforce paragraph three of the NJAB decision.

### 3. *This Matter Should be Remanded to the NJAB.*

■ As set forth below, this matter should be remanded to the NJAB to clarify its opinion and complete its task by addressing the issues relating to a remedy for the violation of the 1984 Agreement found in paragraph two of its opinion.

Local 17 contends that even if the question of the validity of the 1984 Agreement was not submitted to arbitration, paragraph three of the NJAB decision should

be deemed enforceable as an excercise of the NJAB's power under Article X, § 5 of the 1984 Agreement to "render such decisions and grant such relief as they deem necessary and proper, including awards of damages or other compensation." Local 17 argues that the NJAB is entitled to broad latitude in interpreting the contract provision providing remedial power and that paragraph three should be viewed by the court as the NJAB's decision that invalidation of the 1984 agreement was an available and appropriate remedy.

Plaintiffs' response has several elements. First, they contend that the 1984 Agreement does not include the express language authorizing cancellation as a remedy which was included in the 1982 Agreement, *see* footnote 2, *supra*, thus demonstrating the intention of the parties to remove this remedy from the NJAB's powers. Second, plaintiffs argue that even if the 1984 Agreement permits cancellation as a remedy in certain cases, it is not an available remedy in this case because it was not requested at the initial step of the grievance process or, indeed, at any step of that process. *Hotel and Restaurant Employees & Bartenders International Union, AFL–CIO v. Michelson's Food Services, Inc.*, 545 F.2d 1248, 1254 (9th Cir.1976); *General Electric Co.*, 429 F.2d at 413–14; *Totem Marine Tug*, 607 F.2d at 651. Third, plaintiffs assert that rescission of a collective bargaining agreement because of a party's relationship with a non-union company is illegal as a matter of federal labor law. *Ets-Hokin Corporation*, 154 NLRB 839 (1965), *enf'd. sub nom., NLRB v. International Brotherhood of Electrical Workers, Local No. 769*, 405 F.2d 159 (9th Cir.1968), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 237 (1969); *Local*

*437, IBEW (Dimeo Construction Company)*, 180 NLRB 420 (1969); *Carpenters Local 891 (Bryant Sheet Metal Co., Inc.*, 164 NLRB 251 (1966)).

Local 17 and plaintiffs each raise intriguing issues. They are not, however, ripe for judicial resolution. The NJAB did not state that paragraph three of its decision, finding the 1984 Agreement invalid, was intended as a remedy for the violation of that agreement which it found in paragraph two. It is not apparent to the court that the NJAB decided that invalidation was either an available or an appropriate remedy for that violation. It also appears that the NJAB did not address the availability or propriety of the remedies requested from the outset by Local 17, divestiture and monetary damages. The NJAB did not expressly provide for any remedy for the violation of the 1984 Agreement it decided was proven.

The court is asked to speculate on the NJAB's intentions regarding a remedy. This would be inappropriate, for "it is now well established that ambiguities and uncertainties of labor arbitration awards should not be resolved by the court acting as interpreter." *Teamsters Local No. 25 v. Penn Transportation Corp.*, 359 F.Supp. 344, 350 (D.Mass.1973) (citing *Enterprise Wheel*). Rather, the arbitration award should be remanded to the arbitration process for clarification and completion. *Boston Shipping Co. v. Int'l Longshoreman's Ass'n.*, 659 F.2d 1, 3 (1st Cir.1981) (when enforcement requires an interpretation of the arbitrator's award, the proper course is to remand to the arbitrator for clarification); *Locals 2222*, 628 F.2d at 647. It is evident that the court has authority to do so.[9]

**9.** As the Court of Appeals for the First Circuit has stated,

> … [I]t is firmly established within the federal labor law that a district court may, in the context of a section 301 proceeding, resubmit an existing arbitration award of the type here in issue to the original arbitrators for "interpretation" or "amplification." This judicial power, which is in contrast to usual common law principles and requires no affirmative

sanction in the contract or in any statutory provision, has been established by the federal courts in carrying out their mandate to "fashion from the policy of our national labor laws" a substantive body of law applicable in section 301 cases, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). In large measure, it seems to have developed as a necessary corollary to the courts' reluctance themselves to

The question then is whether this dispute should now be remanded to the initial step of the grievance process or to the NJAB. Plaintiffs contend that because the issue of the invalidity of the 1984 Agreement by virtue of mutual representation or mutual mistake was never presented at the initial step of the grievance process, all questions should be referred to that point to begin to resolve the inconsistency between paragraph two of the NJAB decision finding that the 1984 Agreement was violated and paragraph three of the decision finding that the 1984 Agreement was invalid. Such relief, however, is unwarranted in this case.

Where, as here, the contract provides that the arbitrators' decision shall be "final and binding", Article X, § 7, an award is not itself ordinarily an arbitrable issue. *San Antonio Newspaper Guild Local 25 v. San Antonio Light Division*, 481 F.2d 821, 824 n. 3 (5th Cir.1973); *Locals 2222*, 628 F.2d at 648. Grievance proceedings may be ordered anew following an arbitrator's decision which is clear and complete, but not self-executing. *United Papermakers & Paperworkers v. Westvaco Corp.*, 461 F.Supp. 1022, 1024 (W.D.Va.1978). This is not, however, such a case.

Rather, this is a matter in which it is uncertain whether the NJAB intended cancellation as a remedy for the violation of the 1984 Agreement which it found and in which it appears that the NJAB did not decide whether the remedies sought from the outset by Local 17 were available and appropriate. Plaintiffs were always on notice that Local 17 was seeking particular remedies for its grievance. But none has yet been provided. Thus, two principles converge to compel the conclusion that this matter should be remanded to the NJAB for clarification and completion.

First, cases deemed to concern simply the "interpretation" of an award do not require a re-exhaustion of the grievance arbitration process. *Locals 2222*, 628 F.2d at 648; *San Antonio Newspaper Guild*, 481 F.2d at 824 n. 3. "Rather, the proper approach is to resubmit the award to its author for clarification." *Teamster Local No. 25*, 359 F.Supp. at 350. *Steelworkers v. Interpace Corp.*, 447 F.Supp. 387 (W.D. Pa.1978). The issue of whether the NJAB intended cancellation as a remedy for the violation it found in paragraph two is a question of "interpretation."

Second, where, as here, " 'the award does not adjudicate an issue which has been submitted, then as to such issue [the original] arbitrator has not exhausted his function and it remains open to him for subsequent determination.' " *Locals 2222*, 628 F.2d at 649 (quoting identical language in *Interpace Corp.*, 447 F.Supp. at 391, and *Lavale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir.1967)). *See also International Assoc. of Machinists v. Crown Cork & Seal Co.*, 300 F.2d 127 (3d Cir.1962). To the extent that the NJAB did not address Local 17's request for remedies for the violation of the 1984 agreement which it found, its work remains to be completed.

It is, therefore, necessary and appropriate to remand this matter to the NJAB for clarification and completion. It is for the NJAB to decide the pending questions concerning remedies in the first instance. These questions include, but may not be limited to,

(1) Whether the 1984 Agreement authorizes cancellation as a remedy for the violation found by the NJAB under any circumstances;

(2) If so, whether cancellation is an available remedy in this case in which it was not requested by Local 17 at the start, or in the course, of the arbitration process, and it appears that Limbach had no opportunity to present evidence or argument concerning any alleged invalidity; [10]

interpret either collective bargaining agreements or arbitration awards based on the construction of such agreements. Whatever the genesis, there can be no question that the power exists.
*Locals 2222*, 628 F.2d at 647 (citations omitted).

**10.** The *Michelson's* case may be of particular

(3) If authorized and available, whether cancellation is appropriate in view of plaintiffs' contentions concerning limitations imposed by federal labor law on rescission as a remedy and other factors; and

(4) Whether divestiture and liquidated damages as sought by Local 17 are each authorized, available, and appropriate remedies in this case.

When the NJAB has completed its task and clarified its decision the court will, if requested, be in a position to exercise its limited authority to decide any questions properly presented concerning the final NJAB decision.

4. *Other Issues Relating to Relief.*

The issue remains whether the court should order either or both parties to arbitrate from step one of the grievance procedure the question improperly decided by the NJAB, the possible invalidity of the 1984 Agreement by virtue of mutual misrepresentation or mutual mistake.[11] Neither party sought arbitration of this issue before the NJAB decision. Each is now free to initiate a grievance concerning it. Each may decide for itself the wisdom of doing so during the pendency of the reopened NJAB proceeding. Under these circumstances, the court does not deem it appropriate to compel arbitration of the issue of invalidity.

Also remaining is the question of continuing injunctive relief. The court entered a temporary restraining order and a preliminary injunction because the evidence demonstrated, among other things, that in reliance upon paragraph three of the NJAB decision which purported to invalidate the 1984 Agreement, Local 17 members would cease working with Limbach. That aspect of the NJAB decision is being vacated, thus restoring, at least for present purposes, the validity of the 1984 Agreement between

interest to the parties and the NJAB in connection with the remand. In *Michelson's* the Ninth Circuit was addressing an arbitrator's award of punitive damages and stated,

Nor can we say that the arbitrator could award punitive damages. It may be that, if a grievant claims such damages from the beginning, and that claim is processed through all stages required by the agreement, the arbitrator can consider it. But here that did not happen. Manning's claim, as presented by him to the Union, and as presented by the Union to Michelson's contained no such demand. This is equally true of the demand for attorney's fees and costs. Manning made no such claims until the day that the arbitration was to begin. To allow them was not within the arbitrator's power; it was not part of the grievance that had been presented to the employer under the agreement and carried through the first two stages required by the contract. The employer was entitled to rely on the grievance presented as limiting the extent of the question that it was required to arbitrate if it could not arrive at a settlement. However, lest there be any misunderstanding, we are not holding that an arbitrator is bound to limit his decision to the precise measure of relief requested in the original grievance. His job is to define the relief that will compensate the grievant if his claim is upheld. *See Tobacco Workers Int. U. Local 317 v. Lorillard Corp., supra,* 448 F.2d [949] at 955–56 [ (4th Cir. 1971) ]. What we do say is that the remedies here claimed are not usually appropriate in breach of contract cases (*see Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.,* 3 Cir., 1962, *in banc,* 298 F.2d 277, 281 (283 Biggs, J., dissenting; 285, Kalodner, J., dissenting) ) and that such extraordinary remedies are not available at the arbitration stage unless they have been put in issue from the beginning. We express no opinion as to what the arbitrator's powers would be in such a case; it is not before us.

*Michelson's,* 545 F.2d at 1254. *See also General Electric,* 429 F.2d at 413–414; *Totem Marine,* 607 F.2d at 651.

This reference to *Michelson's* should not be construed as expressing the court's view on whether a comparable conclusion is required on the facts of this case. That issue is for the NJAB to decide initially.

11. For the purpose of resolving the pending issues, the court has assumed, without deciding, that the validity of a contract is, as a matter of law, an arbitrable issue, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400–407, 87 S.Ct. 1801, 1804–1807, 18 L.Ed.2d 1270 (1967), and that Article X of the 1984 Agreement which provides that, "Grievances ... arising out of interpretation or enforcement of this Agreement" shall be subject to arbitration expresses the intention of the parties to arbitrate the issue of the validity of the collective bargaining agreement if it is properly raised. The arbitrators, however, must initially decide these issues if they are properly presented to them.

Limbach and Local 17. The arbitration proceedings are being reopened. The 1984 Agreement, Article X, § 7, proscribes strikes during the arbitration process. The court has no reason to believe that Local 17 will not obey this decision and honor the 1984 Agreement, including its no-strike provision. Thus, a continued injunction is now unnecessary and inappropriate. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (the party moving for an injunction "must satisfy the court that relief is needed"); *Derwin*, 719 F.2d at 491–92 ("Courts, after all, do not enjoin parties from violating the law without proof of a real likelihood that such will happen."). This conclusion may, of course, be reconsidered if future events so dictate.

Finally, in view of the posture of this matter, a ruling on plaintiffs' request for damages and related relief would be premature.

## III. RELIEF

Accordingly, the following order is to be entered:

1. The NJAB exceeded its jurisdiction in deciding on February 8, 1985, that the 1984 Agreement was invalid as between Limbach and Local 17. Paragraph three of the NJAB decision is vacated.

2. This matter is remanded to the NJAB for:

(a) Clarification concerning whether it finds invalidation of the 1984 Agreement to be an authorized, available, and appropriate remedy for the violation of that Agreement which it determined was committed; and

(b) Completion of its award by deciding whether each of the remedies requested by Local 17, liquidated damages and divestiture, or any other remedy, is authorized, available and appropriate in connection with that violation.

The parties shall promptly inform the NJAB of this decision and initiate appropriate proceedings in response to this remand.

Within 30 days following clarification and completion of the NJAB award, the parties shall report the result to the court and seek any further judicial review or relief to be requested.

3. The Preliminary Injunction entered on August 15, 1985, is terminated.

4. The court shall retain jurisdiction in this matter pending issuance of a final order to be entered at the conclusion of the process prescribed by paragraph two above.

## ORDER AUTHORIZING INTERLOCUTORY APPEAL

On August 26, 1985, this court issued an opinion and an order in the above-captioned action, copies of which are attached hereto. As reflected in the opinion and in the order, the court determined that the collective bargaining agreement involved in this matter contains provisions which establish and limit the jurisdiction of the National Joint Adjustment Board (the "NJAB"), whose action is challenged in this case (opinion at 1079–1080); that as a matter of Massachusetts law the issue raised by plaintiffs would be regarded by the courts of the Commonwealth as a "jurisdictional" question not barred by the statute of limitations, and this characterization and conclusion are also appropriate as matters of federal law (opinion 1077–78); and that the NJAB decision should be in part vacated (opinion 1078–1080) and in part remanded to the NJAB for clarification and completion (opinion 1080–1084).

On September 24, 1985, the defendant requested that this court authorize an interlocutory appeal of certain aspects of its decision pursuant to 28 U.S.C. § 1292(b). Plaintiffs have since opposed this request.

Upon consideration of the submissions of the parties, the court has determined, and hereby ORDERS, that its Order of August 26, 1985, be and hereby is amended to include the finding that, "The question of whether plaintiffs' claim is barred by the applicable statute of limitations is a ques-

tion of law as to which there is a substantial ground for difference of opinion and that an immediate appeal of this controlling question may materially advance the ultimate termination of this dispute."